H. J. WALTER, Appellant, v. GEORGE HUGGINS
and the MIDLAND REALTY COMPANY, Re-
spondents.

### Kansas City Court of Appeals, May 27, 1912.

MECHANIC'S LIENS: Breach of Contract: Measure of Damages.
Plaintiff, a subcontractor, sued to enforce a mechanic's lien for
plastering. The work was not done according to the contract.
The owner rented the building and did not remove the plaster
or have it done as required by the contract. He was allowed
damages to the extent of the reasonable cost of removing the
defective work and replacing it with plaster that would con-
form to the contract. *Held,* that if the owner is willing to
continue in the use of the defective work, that is his privilege,
but he should not thereby be compelled to forego the right to
reasonable compensation for the breach.

Appeal from Jackson Circuit Court.—*Hon. James E.
Goodrich,* Judge.

AFFIRMED.

*McCune, Harding, Brown & Murphy* for appel-
lant.

Where work is improperly done under a building
contract and the owner, with knowledge of the defect,
takes possession of and uses the building, without
waiver, the amount of damages would be the difference
between the value of the work as done and as it should
have been done. This is the equitable rule and no
other ought to prevail, because it would be unreason-
able to permit the owner, after knowledge of the de-
fective work, to use it so long as it served any good
purpose and then compel the builder to pay him for
entirely new work. Marsh v. Richards, 29 Mo. 105;
Wright v. Sanderson, 20 Mo. App. 534; Spink v.
Mueller, 77 Mo. App. 94; Surety Co. v. Woods, 103
Fed. 745.

*Cowherd, Ingraham, Durham & Morse* for respondents.

(1.) Where there has been a breach of a building contract, either in materials or method of construction, the measure of damages is the sum which will reasonably have to be expended to make the work conform to the contract. Haysler v. Owen, 61 Mo. 270; Hurt v. Hahn, 61 Mo. 496; Spink v. Mueller, 77 Mo. App. 85; McCormick v. Lynch, 69 Mo. App. 524; Fairbanks v. DeLissa, 36 Mo. App. 711; Fletcher v. Mfg. Co., 35 Mo. App. 321; Wright v. Sanderson, 20 Mo. App. 534; Simons v. Wittmann, 113 Mo. App. 357; Mfg. Co. v. Phelps, 130 U. S. 537; King v. Nichols & Co., 53 Minn. 453; White v. McLaren, 151 Mass. 553; Danforth v. Freeman, 69 N. H. 466; Sutherland on Damages (3 Ed.), sec. 699. (2) The owner or employer can bring suit without completing the contract or finishing the work and can recover the expense necessary to perform the work which the contractor neglected to do. Simons v. Wittmann, 113 Mo. App. 357; Sutherland on Damages (3 Ed.), sec. 699.

JOHNSON, J.—This is an action to enforce a mechanics' lien. Plaintiff, as subcontractor, lathed and plastered a building erected on the premises of the defendant Midland Realty Company. Defendant Huggins was the original contractor. One of the defenses raised by the pleadings is that the work was not done according to the plans and specifications as required by the contract. The cause was sent to a referee who heard the evidence and reported his findings of fact and conclusions of law in which he found that the work was not done by plaintiff in compliance with the plans and specifications; that the reasonable cost of making it conform to the contract would be $800, but that since the defendant owner had deducted only $500 from the contract price as compensation for the

damages sustained in consequence of plaintiff's breach, the defendant contractor should be allowed damages only in that sum on his counterclaim. Plaintiff filed exceptions to the report of the referee which, so far as they related to the item of damages we have mentioned, were overruled and judgment was rendered for plaintiff for the value of the lathing and plastering, less the sum of $500 allowed on the counterclaim. Plaintiff appealed.

The defect in the plastering was in the workmanship. It was left uneven and "wavy" on the surface. The contract required plaintiff to do the job in a workmanlike manner and to the satisfaction of the architect. The finding of the referee and trial court is that the job was not done in such manner and it appears the architect refused to accept it. The owner purposed renting the building and it was occupied by tenants as soon as completed. It is conceded the owner sustained no loss of rentals on account of the defect and it does not appear that the plastering will be any less durable than it would have been had it been finished in a workmanlike manner, i. e., with a smooth and even surface. Over the objections of plaintiff, defendant was allowed to introduce evidence tending to show that in order to make the work conform to the contract it would be necessary to remove substantially all of the finishing coat and replace it and that the reasonable cost of such work would be about $800.

Defendant also offered to show by a competent witness "the difference in the value of that building with the plasterer's job in the condition it was left by Mr. Walter and what would be the value of it had the plastering been first-class and the best of its kind called for by the specifications." Plaintiff objected on the ground that such evidence is irrelevant and immaterial and the objection was sustained by the referee. The defendant owner occupied the building by its tenants from the date of its completion to the date of the trial,

a period of about two years, and has used the plastering in the condition left by plaintiff. The subject of controversy is the allowance of damages in the sum of $500 on the counterclaim and the difference between the parties is over the rule that should be used in measuring such damages. The rule employed by the referee and trial court and expressed in the judgment allows defendants the reasonable cost of removing the defective work and replacing it with plastering that would conform to the plans and specifications.

This is on the theory that the owner of the building has a right to require that it be built by the contractor according to the terms of the contract and that where any part of the work is in defect of the contract the owner may repudiate it and have it replaced at the cost of the delinquent contractor. The soundness of this rule cannot be questioned in instances where the owner, insisting on an adherence to the terms of the contract, acts seasonably in having the defective work removed and replaced. In such cases he is entitled to compensation for his direct and consequential damages resulting from the breach of contract. But the applicability of the rule of which we are speaking to cases such as the present where the owner, without waiving the contract or acquiescing in its deficient performance takes possession of the building and by long continued use evinces a purpose to use work defectively performed as long as it may be used, is a serious question that calls for thorough investigation and analysis.

The rule contended for by plaintiff thus is stated in the brief of his counsel: "Where work is improperly done under a building contract and the owner, with knowledge of the defect, takes possession of and uses the building without waiver, the amount of damages would be the difference between the value of the work as done and as it should have been done. This is the equitable rule and no other ought to prevail,

because it would be unreasonable to permit the owner, after knowledge of the defective work, to use it so long as it served any good purpose and then compel the builder to pay him for entirely new work."

In Marsh v. Richards, 29 Mo. 99, the contract called for pressed brick in the front of the building and the contractor used a different kind of brick. The Supreme Court held: "In such cases, although the work has not been done within the stipulated time nor in the manner or with the materials required by the terms of the contract, he who performed the work may recover what it is reasonably worth to the owner, not exceeding the contract price. When work is to be performed with a specified material, or in a particular manner, for a price agreed upon, and which is favorable to him who has the work performed, the contractor cannot, by violating his contract, place himself in a better situation than if he has complied with his un dertaking. The terms on which it was proposed to do the work may have been the inducement to the contract, and to permit the contractor to violate his contract and to recover the full value of his labor and materials would be encouraging dishonesty and unfair dealing. In such cases, the measure of damages would seem to be justly arrived at by the statement, that if the work, when done under the contract and in pursuance to its terms, is worth the price agreed upon, what is the work worth, done as it is, proportionally to the price fixed by the contract? In this way, he who has contracted for the work will retain the advantage he had a right to secure to himself in fixing the price of the work, and of which the contractor cannot deprive him by his own act in violating his undertaking."

In Wright v. Sanderson, 20 Mo. App. 534, the foundation wall was not built in accordance with the terms of the contract and was made to conform to the contract by the owner. We held that "the measure of damages is the sum which it would reasonably take

to make the foundation wall such as the defendants contracted to build. And this is so whether or not the plaintiff (the owner) had expended said sum or in case he had expended said sum for said purpose, without regard to what had induced him to do so.'' We were guided in this expression by the opinion of the Supreme Court in Haysler v. Owens, 61 Mo. 272, to which we referred. In the Haysler case a roof defectively constructed was the subject of contention. The jury were instructed that the measure of damages was ''the difference between the value of the roof agreed to be put on and the one actually put on.'' This instruction was approved in the opinion:

''The rule as to the measure of damages laid down by the court is a correct one as to building contracts, in all cases where the contract price is a fair valuation for the work and it has been completed in general conformity to the requirements of the contract, but has been defectively executed in some particulars, and the suit is for the contract price, and defendant does not seek to recover any special consequential damages by way of recoupment.'' But the court proceed to say that a different rule obtains in instances where the work has not been done in general conformity to the specifications but deviates from them either in plan or in the materials used. In such cases, and it was a case of that kind we considered in Wright v. Sanderson, supra, the rule for measuring the damages ''is to ascertain what it will cost to make the building conform to what the builder contracted it should be.''

''And cases might arise,'' say the court, ''where the deviation from the terms of the contract would be so gross and reprehensible that the builder should not be permitted to recover anything for his work.

''Courts have no right to make contracts for the parties, and they cannot compel a man to pay for a building for which he did not contract, and which he does not want, and which he would rather have re-

moved from his premises, unless there has been some waiver on his part of strict performance. Builders cannot substitute their own taste or judgment or fancy for the stipulations of their contracts, and compel parties to pay for work done by them in open violation of their contracts, on the ground that it is equally as valuable as that which they have contracted to perform.''

Hirt v. Hahn, 61 Mo. 496, was an action on a builder's bond in which the owner claimed damages on account of the contractor's failure to build the house according to the agreed plan. The owner expended money in completing the house and the Supreme Court, speaking through Judge WAGNER, held: ''The instruction makes the element of damages depend upon the amount necessarily expended by plaintiff in completing the house, caused by Bolhofner's breach of his contract. . . . These were the legitimate sources of damages.''

In Spink v. Mueller, 77 Mo. App. 85, the defendant contractors performed the work of finishing the interior wood work of the building under a contract that required them to use a certain kind of varnish. The work was completed in 1893, and was accepted by the architect and the owner occupied the house and used the work until 1896 when, on account of the defective condition of the varnishing, owing to the contractor's use of a brand of varnish different from and inferior to that specified in the contract, the owner was compelled to have all the work done over. He sued the contractors to recover his damages and in the majority opinion the St. Louis Court of Appeals said:

''Unquestionably the measure of plaintiff's damages is the sum which he necessarily expended to make the varnishing of the wood work of his house to conform to the contract, whether such sum be more or less than the sum for which the defendants contracted to do the work.'' Judge BIGGS challenged this rule in

a vigorous dissenting opinion from which we quote an excerpt that forcibly expresses the views on which plaintiff relies in the present case.

"I think the true measure of plaintiff's damages is the difference in value between the work as done and as it ought to have been done. It must be kept in mind that we are dealing with a building contract, and the law as applicable only to such contracts must be considered. I do not for a moment question the correctness of the rule stated in Haysler v. Owen, 61 Mo. 207, but I do say it has no application in this case. In that case Judge HOUGH said: 'When the building has been completed, but differs in plan of construction or in materials employed from that which the builder contracted to erect, and this is the only element of damage, and there has been no waiver, the true rule for estimating the damages sustained by the owner, whether the action be for the contract price or for the value of the labor and material, is to ascertain what it will cost to make the building conform to what the builder contracted it should be.' The gist of the rule as stated is, that the owner of a building has a right to stipulate for certain materials, and it is the business of the builder to comply with the stipulation. If he disregard it, the owner may, in ordinary cases, remove the work and have it done according to contract, and the builder must answer to him for its reasonable cost. But to avail himself of this remedy the owner must act seasonably, that is, when notified of the defective work, he must proceed forthwith to remedy it. When he does the expenditures therefor will be considered as direct damages resulting from the violation of the contract. In such a case the builder cannot complain that he gets nothing for the work that he did do and is made to pay the cost of the new work, for his liability is to be attributed solely to his own folly. But if the work is used with knowledge of the defect but without waiver, or if after acceptance a latent defect

is discovered and the owner continues to use the work, the damages to which he will be entitled must be regarded as consequential, that is, damages consequent upon a condition caused by the failure to perform the contract.''

The Supreme Judicial Court of Massachusetts in White v. McLaren, 151 Mass. 553, has this to say of the rules pertaining to the measure of damages in such cases: ''In determining such damages different elements are proper for consideration in different cases, according to the nature of the defect. Sometimes the measure of damages is the necessary cost of making the work according to the specifications. If a loss of the use of the premises for a time would naturally be involved, that should be taken into the account. We can imagine a defect of such a kind that the probability of the owners using the house without discovering it, and suffering damage to the building in such use of it, might be considered in fixing its value as constructed. The defect might be of such a character as to diminish the value of the house but little, while to make the work conform literally to the contract would involve reconstruction at unreasonable and disproportionate expense. The question ordinarily is, How much less is the building fairly worth. than it would have been if the contract had been performed?''

The Supreme Court of the United States had before it a case where the plaintiff sued to recover the remainder of the purchase price of certain machinery installed in defendant's mill in a manner to make the machinery a part of the mill and, therefore, a part of the land. The defense was that the machinery which was being used by the defendant did not comply with the contract. Held, ''In such a case, it would be most unreasonable to compel the defendant, in order to entitle him to avoid paying the whole contract price, or to recover damages for the plaintiff's breach of contract, to undergo the expense of taking out the ma-

chinery, and the prolonged interruption of his business during the time requisite to obtain new machinery elsewhere. The rule of damages, adopted by the court below, of deducting from the contract price the reasonable cost of altering the construction and setting of the machinery so as to make it conform to the contract, is the only one that would do full and exact justice to both parties, and is in accordance with decisions upon similar contracts." [Stillwell Mfg. Co. v. Phelps, 130 U. S. 520.]

In Davenport v. Freeman, 43 Atl. Rep. 621, the Supreme Court of New Hampshire held: "The rule of damages laid down by the referee, that the plaintiffs are entitled to the fair value of the work done by them in building the house, not exceeding the contract price, and the defendant is entitled to the fair value of the cost of correcting any bad work done by the contractor, so far as it can be corrected, and to the fair value of the damage done to him where it cannot now be reasonably replaced, as an offset in recoupment, is not strictly correct as a statement of the plaintiff's right of recovery; for it is clear that the ground upon which the plaintiff recovers, where, for failure of performance, he can not recover upon the contract, is not the value of the work done, but the benefit received by the defendant. The statement of the referee as to his application of this rule, however, makes it clear that by the fair value of the work done he means the value to the defendant. So understood the rule is correct."

In its essential facts the case in hand more nearly resembles the case of Spink v. Mueller, supra, than any other we have reviewed. The rule applied in the majority opinion was borrowed from the leading case of Haysler v. Owen, supra, and is the rule which the Supreme Court says in that decision applies to cases where the building has been completed but the work in question "differs in plan of construction or in materials employed from that which the builder contracted

to erect.'' Under that rule the measure of damages is the reasonable cost of bringing the work to the contract specifications. Certainly this is a just rule, since any other in logical effect would be a practical denial of the owner's right to insist on having his contract performed—on receiving what the contractor has agreed he shall have. No rule of damages should be applied where the result would be to substitute a court made contract for that the parties themselves have made. Such would be the result in the present instance should we adopt the rule contended for by plaintiff that the difference between the value of the plastering as done by plaintiff and the value of the work had it been done in accordance with contract is the true rule of damages. The defendant owner has suffered no diminution of rental value of the building and for aught disclosed the plastering will last as long as plastering put on with an even surface would last. If the owner chooses to use the work as long as it will last it will not suffer any pecuniary loss and as it does not intend to occupy the building except by tenants, the work will be just as valuable to it as work properly done. Must we say then that having a work just as valuable as that specified in the contract would have been the owner has no remedy, no right to a performance of the contract or the just equivalent of such performance? We think we are not constrained to pronounce a rule so emasculatory of one of the most fundamental principles of contract law. The substitution by the contractor of poor workmanship for good was a breach of his contract and as the poor workmanship was of a character to affect the whole job—to leave its entire surface uneven, wavy and lumpy, a standing offense to the eye and taste, the defect was as much a variance from the general plan and specifications as was the substitution of stock brick for pressed brick in the case of Marsh v. Richards, supra, where Judge Scott said that if one pays for the gratification of

his taste he has a right to have it gratified, and the delinquent contractor will not be heard to say that the house built of cheap material is as valuable as one built of more costly material. So an owner is entitled to good workmanship when he pays for it and stipulates for it. The cases we have reviewed show that in the choice of rules for the measurement of damages in building cases, the old saying that circumstances alter cases has peculiar force. But the fundamental idea running through all of the case law is that an owner is entitled to a performance of the contract by the contractor and where the contract is breached, is entitled to recover damages that will be a just equivalent for the breach. Manifestly the rule applied by the trial court is the one that fits this case. There was no acceptance of the work and the use of the building by the owner without having the work torn out and replaced did not alter its right to recover direct damages. Such use, of itself, cannot be construed as a waiver of acceptance. An owner has a right to occupy his house at any time he chooses and it takes more than mere occupation to constitute an acceptance of work not done by the contractor in accordance with the contract. To hold that the owner lost his right to damages by not replacing the work ''seasonably'' would be to excuse the wrong of the contractor on the ground that the owner had chosen to use its own property in a way it had a legal right to use it—a manifest absurdity.

Paraphrasing what was said by the Supreme Court of the United States in Stillwell v. Phelps, supra, it would be most unreasonable to compel the owner in order to entitle him to avoid paying the whole contract price or to recover damages for the plaintiff's breach of contract to undergo the expense of replacing the plastering and the loss of rentals while such work was being done. If the owner is willing to continue in the use of the defective work, that is its privilege,

but it should not thereby be compelled to forego its right to reasonable compensation for the breach.

The judgment is affirmed.    All concur.