KASBO CONSTRUCTION COMPANY, a corporation, Appellant, v. MINTO SCHOOL DISTRICT OF CAVALIER COUNTY, North Dakota, a corporation, Respondent.

(184 N. W. 1029.)

**Schools and school districts — in action against district for balance for building, evidence held to show defective performance.**

  1.  Plaintiff's action is to recover the balance claimed to be due under the terms of a written contract, and for extras alleged to have been furnished for the construction of a building to wit: a school house. The defendant interposed a defense to the effect that the building was not constructed in accordance with the terms of the contract, plans nor specifications; that the workmanship was poor, etc. The evidence abundantly established that the building was not so constructed, and that it was very defective. The jury returned a verdict in defendant's favor for a dismissal of the action, and judgment was entered accordingly.

**Denial of motion for new trial held not error.**

  2.  Thereafter, plaintiff made a motion for a new trial which was denied and an order to that effect entered, and in this it is *held* there was no error.

Opinion filed October 20, 1921.

Appeal from an order denying a motion for a new trial, *Burr,* J.

Order affirmed.

*G. Grimson,* for respondent.

"Where an instrument has been executed by only a portion of the parties between whom it purports to be made, it is not binding on those who have executed. * * * The reason for holding the instrument void is that it was intended that all parties should execute it and that each executes it on the implied condition that it shall be executed by the others and therefore that until executed by all it is inchoate and incomplete and never takes effect as a valid contract and this is especially true where the agreement expressly provides or it is manifestly intended that it is not to be binding until signed."   13 C. J. 305; Wilcox v. Saunders, 4 Neb. 569; and cases cited in notes 85, 13 C. J. 306.

"One party to a contract cannot alter its terms without the assent of the other. The minds of the parties must meet as to the proposed modification." 13 C. J. 591.

"In an action for alleged breach of contract it is error to instruct that if the plaintiff suggested modification and the defendant failed to answer him, he agreed thereto and the contract as modified was the true contract, since one need not answer and cannot be bound in the absence of actual consent." "One of joint parties cannot extend the time for performance without the consent of his co-party." 162 Pac. 845; Northwestern F. & M. Ins. Co. v. Connecticut F. Ins. Co. 105 Minn. 117 N. W. 825; Molostowsky v. Grauer, 113 N. Y. Supp. 679; Note 7, 13 C. J. 591; U. S. Central C. v. Good, 120 Fed. 793; Ehrman v. Rosenthal, 49 Pac. 460; Tutt v. Davis, 110 Pac. 690; State Bk. v. Heinse, 160 N. W. 903; Blake v. Osmundson, 159 N. W. 766; Pardoe v. Jones, 143 N. W. 405; White Pine Lmb. Co. v. Mfg. Co. 158 N. W. 124; note 37, 13 C. J. 601.

"A new trial will not be granted merely because the losing party or his attorney did not exercise prudence or erred in judgment and can probably make a better case or defense on another trial." 29 Cyc. 852; Fincher v. Malcolmson, Cal. 38, 30 Pac. 835; Holderman v. Jones, 52 Kan. 743; 34 Pac. 352.

"Suprise at the admission of proper evidence is generally not ground for a new trial. * * * Surprise at the exclusion of inadmissible evidence is seldom ground for a new trial and this rule applies to the exclusion of testimony of an incompetent witness and to the rejection of documentary evidence or secondary evidence for the introduction of which no proper foundation has been laid." 29 Cyc. 862, and cases cited in notes 28 and 30.

"The measure of damage occasioned by failure to perform a building contract in the case of substantial performance is the difference between the value of the work done or the building erected and the value of that which was contracted for." 9 C. J. 810.

"The fundamental idea running through all of the case law is that an owner is entitled to the performance of a contract by the contractor and where the contract is breached is entitled to recover damages that will be a just equivalent for the breach." Waller v. Huggins, 148 S. W. 148.

"The question ordinarily is how much less is the building fairly worth than it would have been if the contract had been performed." White v. McLaren, 151 Mass. 553; Gibson v. Harlan, 13 Tenn. 440.

"In an action for a breach of building contract for alleged improper construction the owner's measure of damages is the difference between the value of the building when constructed and what its value would have been if constructed according to the contract and with reasonably sound material and reasonably skillful labor." Hartford Mill Co. ·v. Hartford Tobacco Warehouse Co., 121 S. W. 477 (Ky.).

"The measure of damages is the difference between the value of the house as finished and the house as it ought to have been finished under the contract, plans and specifications." Small v. Lee Bros. 61 S. E. 831 (Ga.); Norcoss Bros. v. Vose, 81 N. E. 468; Fleming v. Lunsford, 163 Ala. 540; 50 So. 921.

*Sinness & Duffy,* for appellant.

"If a person accepts and adopts a written contract, even though it is not signed by him, he is deemed to·have assented to its terms and conditions and to be bound by them." 6 R. C. L. 642.

"Signature is not always essential to the binding force of an agreement. The object of a signature is to show mutuality or assent, but these facts may be shown in other ways; and unless a contract is required by statute or arbitrary rule to be in writing, it need not be signed, provided it is accepted and acted upon. * * * Further it is competent for the parties to adopt it as their contract without signing it, provided their intention to do so is clear." 13 C. J. 303; Ramsay Realty Co. v. Ramsey (Iowa) 113 N. W. 468; Fortham v. Peters (Ill.) 69 N. E. 97; Kim v. Walters, (S. D.) 133 N. W. 277; Reed v. Coughran (S. D.) 11 N. W. 550; Henderson v. Henderson (Iowa) 114 N. W. 178; Muscatine Water Works Co. v. Muscatine Lumber Co. (Ia.) 52 N. W. 108; Merritt v. Adams Co. Land Co. 29 N. D. 496; Griffin v. Bristle (Minn.) 40 N. W. 523;.Hefferman v. Davis, (Cal.) 140 Pac. 716; Bloom v. Hazzard, (Cal.) 37 Pac. 1037; Leonard v. Howard, (Ore.) 135 Pac. 549; Ullsberger v. Meyer, (Ill.) 75 .N. W. 482; McPherson v. Fargo, (S. D.) 74 N. W. 1057.

The Court said, "If it (the school building) cannot be remedied, then the defendant is entitled to a judgment for the amount it paid." That is not the law. Handy v. Bliss, 204 Mass. 513; 90 N. E. 864; 134 Am. St. Rep. 673.

GRACE, C. J. This is an action to recover $3,486.40, the balance of the contract price about $9,241.40, and $877.68 for alleged extra work,

labor, and material for the construction of a certain schoolhouse for defendant. The defendant paid about $7,000 of the contract price.

The defendant admits that plaintiff erected and constructed such building, but denies that it was constructed and finished according to the plans and specifications, and by appropriate pleading sets up two separate counterclaims aggregating $9,000. The issues were submitted to a jury and resulted in a verdict in favor of defendant for a dismissal of the action. Plaintiff made a motion for a new trial which was denied, and from the order denying new trial plaintiff appeals and assigns 7 errors based upon alleged erroneous instructions by the court and 28 specifications of the insufficiency of the evidence to sustain the verdict.

The material facts necessary to be stated are as follows: The defendants published notices for bids for the construction of a schoolhouse, according to plans and specifications, to be erected in Minto township in Cavalier county. On about April 1, 1918, at a meeting of the school board, it let the contract for the construction of the building to the plaintiff. At that time the terms of the contract were discussed between the parties and a written contract, Exhibit C, was entered into and signed by both parties. It is of too great length to be set out in full and it is needless to do so.

Exhibits D and E, specifications and plans, are part of the contract. There is another alleged contract, Exhibit A, which plaintiff contends is the contract under which the work was performed. It claims that though this contract is unilateral, having been signed by the plaintiff only, nevertheless it was sent to the defendant and retained by it. Plaintiff claims that the defendant agreed that the work should be done under the latter contract. There is positive testimony, however, that Exhibit C was the contract agreed upon and signed by both parties. After its completion, Kasbo took it with him for the purpose of making copies of it and was to return it. At the trial plaintiff attempted to introduce Exhibit A in evidence. It was excluded, and properly so, as it never was accepted nor approved by the school board. It was a contract materially different from Exhibit C. Furthermore, the following stipulation was made in open court between the plaintiff and defendant which was dictated by Mr. Devaney, one of plaintiff's attorneys:

"It is stipulated by and between the plaintiff and defendant that Exhibit C is the original contract entered into by and between plaintiff and defendant on or about April 1, 1918, excepting therefrom the por-

-tions which are stricken out with a red pencil and including those portions contained in brackets and green ink which the plaintiff made in the contract after the contract was reduced to writing, and signed therein approved and consented to by the defendants. It is further stipulated that Exhibit F is a true copy of said original agreement and may be used upon the trial of this case for any purpose for which the original may be used. It is further stipulated that Exhibit D is the specifications referred to in said contract, and it should be admitted in evidence as such and as the specifications according to which the schoolhouse was to be built, and that Exhibit E may be admitted in evidence as the original plans of the schoolhouse to be built by the plaintiff under this contract and according to which plans it was to be built."

Certainly and especially in view of the above stipulation, there was no error in excluding Exhibit A. Exhibit C, as it originally existed before the changes inserted into it by Kasbo and which is represented by Exhibit F, is the contract and the only contract between the parties, and the trial was had on that theory, and the plaintiff cannot now change its position. The 28 assignments of error relative to the insufficiency of the evidence to sustain the verdict need no lengthy discussion. If there is competent evidence in the record which will support the verdict, then all errors based upon the insufficiency of the evidence must be considered of no merit. An examination of the evidence not only discloses that there is some competent evidence, to support the verdict, but that there is an abundance of it. It is entirely unnecessary to set it forth in detail. It is sufficient to state that there is an abundance of evidence to show that the foundation of the building was improperly and poorly constructed; that the cement and gravel used therein were not in proper proportion nor in compliance with the specifications, and as a result, according to the testimony of Mr. Shannon, an architect of 25 years' experience, who examined the building, the foundation, and basement walls, it appears that the walls were soft; that they were very irregular and not straight and out of plumb in places; that the concrete was soft. He found a crack in the northeast corner and one in the southwest corner, stating that these were ruptures in the wall. In explaining what he meant by the walls being soft, he stated, in substance, that they are not of the density that concrete usually is; that it would rub off by hand, or pieces could be taken out of it. He stated that the walls were not safe nor durable and that as an architect he would not allow such a wall, but

would condemn it, have it taken out and another put in. He stated further that the rafters, ceiling, and joists had sagged; that they were not properly braced; that the floor had sagged some; that the frame at the plate line was very roughly thrown together and not put in according to plans and as a result seems to let the building spread; that the cornices were open and let the daylight in; that some of the wainscoting was out of plumb; that the outside walls were not in plumb.

There is much more evidence by the same witness largely to the same effect. He further testified as follows:

Q. What difference in money in your opinion would there be between the building as it stands now, as erected by Mr. Kasbo, and the building as it should have been erected under that contract? A. $4,500.

He testified further to the effect that the building could not be repaired and put in condition as required by the specifications for $4,500; that there was no way that the wall could be repaired and made to stand up according to the plans and specifications; that it would have to be wrecked and rebuilt; and that in his opinion it would cost, to take out and rebuild a foundation for a new building, about $3,000. In substance his testimony shows that to make the building, aside from the foundation or basement walls, comply with the plans and specifications, it would have to be wrecked and rebuilt, and that this could not be done for $4,500.

The evidence of Shannon is substantiated by that of other competent witnesses. The evidence is abundant to sustain the verdict of the jury. If the verdict of the jury had been for a much larger amount, there is abundant evidence in the record to have sustained it.

The several assignments of error predicted upon alleged erroneous instructions have been carefully analyzed and are of no real substance, and are largely without merit. The parts of the instructions from which excerpts are taken are entirely too lengthy to be here set out and none of them merit discussion. It will, however, do no harm to briefly discuss the only one of importance. It is claimed that it does not state the true measure of damages. It is as follows: "It would be your duty to deduct the costs of supplying the defects." This is but an excerpt from the following portion of the instructions:

"To entitle the contractor to recover on a building contract, which has not been fully complied with by him, when he admits there are defects but claims the contract was substantially performed, it must appear and

he must show that not only he endeavored to perform it in good faith, but also that he has done so, except as to unimportant omissions or deviations which are the result of mistake or inadvertence, and were not intentional, and which are susceptible of remedying so that the other party will get substantially the building he contracted for. For example, if the building is substantially erected, but the contractor has failed through mistake or inadvertence or some other reason that is not intentional, to give the required thickness of painting, and· it is shown how much it will cost to supply this defect and if the defects were supplied, the building would be substantially correct, then he would be entitled to recover, but it would be your duty to deduct the cost of supplying the defects. I mention painting, not that it is proof of a defect, but merely as an illustration."

Certainly there is no error in giving that instruction. The following is complained of :

"If the building is fairly· in compliance with the contract, but has defects which should and can be remedied, then the defendant has the right to deduct the cost of remedying from the contract price and if then it has overpaid the plaintiff, it is entitled to judgment for the difference."

If it cannot be remedied, then the defendant is entitled to judgment for the amount it paid, and if it can be remedied, then deduct from the contract price $9,241.40, and from the proved extras which ought to be paid for, the amount necessary to remedy it, and if the remainder be less than the amount paid, then the defendant is entitled to judgment for the difference. Even though the foregoing instruction be considered ·by itself, and not in connection with the instructions as a whole, it is clear that the giving of it was not error, and, if so, the error was harmless, for certainly it states the correct rule of damages.

In 9 C. J. p. 110, the rule is thus stated :

"The measure of damages occasioned by failure strictly to perform the building contract is, in the case of substantial performance, the difference between the value of the work done or the building erected and the value of that which was contracted for."

In Walter v. Huggins, 164 Mo. App. 69, 148 S. W. 148, it is stated:

"The fundamental idea running through all of the case law is that an owner is entitled to a performance of the contract by the contractor, and, where the contract is breached, is entitled to recover damages that will be a just equivalent for the breach."

In White v. McLaren, 151 Mass. 553, 24 N. E. 911, it is stated that—

"The question ordinarily is, how much less is the building fairly worth than it would have been had the contract been performed?"

In Gibson v. Carlin, 13 Lea (Tenn.) 440, it is stated that—

"The measure of damages is ordinarily the difference between the contract price and the value of the work as done for merely inferior work, and for defective work the cost of replacing it so as to make it equal to the work contracted for."

In Hartford Mill Co. v. Hartford Tobacco Warehouse Co. (Ky.) 121 S. W. 477, it is stated that—

"In an action for breach of a building contract for alleged improper construction, the owner's measure of damages is the difference between the value of the building when constructed and what its value would have been if constructed according to contract, and with reasonably sound material and reasonably skillful workmanship."

In Small v. Lee & Brothers, 4 Ga. App. 395, 61 S. E. 831, it is stated that—

"The true measure of damages is the difference between the value of the house as finished and the house as it ought to have been finished under the contract, plans, and specifications."

The language of the instruction complained of stated the rule enunciated in those cases. The language used is different than in those cases, but in reality it states the same rule, for when defects, etc., are supplied, the building would be according to contract.

The instructions were not erroneous and prejudicial for failure to set forth the law relative to settlement or adjustment.

The plaintiff contends that after the completion of the schoolhouse the defendant accepted it by taking possession of it and using it. There is no merit in this contention, as there was no other proper place where a school could be held, and of necessity defendants were compelled to use the building in its defective condition, and in doing so it waived none of its claims or causes of action, if any, against plaintiff.

There is no reversible error in the record, and the order appealed from should be affirmed.

It is affirmed.

Respondent is entitled to its costs and disbursements on appeal.

Birdzell, Robinson, Bronson, and Christianson, JJ., concur.