Sam HOTCHNER and Sally Hotchner, his
wife, Plaintiffs-Respondents,

v.

J. M. LIEBOWITS, d/b/a Liebowits Realty
& Construction Co., Defendant-
Appellant.

No. 30458.

St. Louis Court of Appeals.

Missouri.

Dec. 20, 1960.

Motion for Rehearing or to Transfer to Su-
preme Court Denied and Opinion Modified
on Court's Own Motion Jan. 13, 1961.

322

Max Sigoloff, St. Louis, for appellant.

Ziercher, Tzinberg, Human & Michenfelder, Erwin Tzinberg, Clayton, for respondent.

BRADY, Commissioner.

The respondents, husband and wife, brought this action against the appellant on the grounds that the residence which they purchased from appellant was not constructed in a clean, workmanlike manner as provided in the specifications, in that: (A) the footings were placed on ground having insufficient bearing resistance resulting in settling and cracking in the foundation, brickwork, and inside plaster; (B) the plastered walls, stone trim and bricks of the outer walls had cracked, shifted and become loosened and broken; (C) tiles on the kitchen floor had pulled apart; (D) the concrete floor in the basement and garage portions of the improvement had cracked, permitting water to come into the basement which did not

remain dry for a period of a year after completion as guaranteed by the appellant; (E) the windows, doors, fireplace, concrete steps, walks and "other portions" of the house were faultily constructed; (F) the insulation specified was not furnished; and (G) the appellant failed to install a basement drain, failed to complete the installation of the heating and air-conditioning unit, and used galvanized iron instead of copper flashing. It was further alleged in a separate paragraph of the petition that the appellant knew, or should have known, of the insufficient bearing resistance of the subsoil on which he caused the footings to be placed, and that this would cause the improvements to settle with resulting serious fractures in the walls of the building. Respondents prayed judgment by reason of breach of contract in the amount of $5,000.

Appellant's answer admitted the contract and denied the other allegations. The cause was tried to a jury with a resulting verdict in favor of respondents in the amount of $3,000. The appellant filed timely motion for new trial and perfected his appeal to this court.

The appellant sets forth eleven points in his brief, two of which have five subpoints, another of which has six subpoints, another has seven, and another of which has ten subpoints. However, one reading and considering these numerous contentions finds that they are often restatements of each other, and may be fairly regrouped into five main contentions. These are (1) that respondents failed to make a submissible case and therefore the trial court committed prejudicial error in overruling appellant's motions for a directed verdict; (2) that the trial court prejudicially erred in giving certain instructions and in refusing others; (3) that the appellant's objection to the hypothetical question asked of respondents' expert witness David should have been sustained; (4) that the appellant's motion to strike the testimony of the witness Hallauer should have been sustained; and (5) that the verdict was grossly excessive.

For the purposes of our review, appellant's motion for new trial having been overruled, the respondents' verdict is final on factual issues provided it is supported by substantial evidence; and whether respondents made a submissible case is to be determined by a review of the probative facts not entirely unbelievable or opposed to the physical facts and from the standpoint most favorable to the respondents, including facts established by appellant's evidence if they aid respondents' case and providing they do not conflict with the respondents' testimony or fundamental theory of the case, and as we are not privileged to weigh conflicting evidence, we are to give the respondents the benefit of all reasonable inferences and disregard appellant's evidence insofar as it is unfavorable to the respondent. Capra v. Phillips Investment Co., Mo., 302 S.W.2d 924, and cases cited at loc. cit. page 929(1); Missouri Digest, Appeal and Error, ☞930(1), 989, 1005(2).

With respect to the alleged failure of the appellant to do all of the things and furnish all the materials specified in the contract, it is clearly stated in the specifications which are in evidence that there were to be two drains in the basement floor. The respondent Sally Hotchner testified there was only one. This was also the testimony of the witness Hallauer. The appellant himself admitted upon cross-examination that the specifications called for copper flashing and he used aluminum. Since this evidence was in support of, and not in conflict with, respondents' case, it is to be considered by us upon this inquiry. There was no testimony as to the allegation of failure to supply the specified insulation nor concerning the alleged failure to complete the heating and air-conditioning installation. As to the latter, the evidence was that this item was the subject of negotiation and agreement by the parties as a separate item outside of this contract. The appellant testified that insulation was furnished.

What was the evidence as to the alleged faulty construction of windows, doors, the fireplace, concrete steps and walks? The respondent Sally Hotchner testified that there was a "bad door" between the garage and basement, that the garage door was improperly installed, with the result that rain came in the two-inch opening left by this improper installation; that there was a window in the den that would not raise; that the appellant's workmen had not properly anchored the legs of the ornamental iron posts on the porch; and that the first time they built a fire in the fireplace, the house filled with smoke and the fireplace opening had to be enlarged; that within three or four months after purchase of the house, the concrete walk at the rear of the house started to crack, and that the driveway began cracking about seven to eight months after purchase; that the tiles on the kitchen floor had become separated and cracked and broken; the witness Hallauer testified that he found some windows that were not operational; that the floor joists in the basement had been left so that there was a space between them and the foundation and the top of the basement wall; that the floor in the garage and driveway was checked and did not have a smooth finish.

With reference to the allegations of respondents' petition alleging breach of the contract because of the faulty construction relating to the placement of the footings on ground having insufficient bearing resistance which resulted in the settling and cracking of the foundation, brickwork, inside walls, basement walls and floor, the respondent Sally Hotchner testified to a large crack as one came down the steps, that the basement wall on the east side of the house was cracked and water seeped through; that there was a large crack in the plaster at the west wall of the southeast bedroom; that the wall tile had cracked in the bathroom; that before they had moved into the house some bricks on the east wall had been removed and replaced because they had cracked, and that these cracks had returned about six months

after they moved in and were now getting worse; that there were cracks in the basement floor through which water seeped about six months after they moved in. There are several pictures which were admitted into evidence graphically showing these cracks. The cracks shown in the photographs occurring in the interior and exterior walls of the house were also testified to by the witness David, who also corroborated the testimony as to the interior and exterior cracks in the southeast end of the building extending down to the footing line in the basement. The witness Newmark testified as to the crack in the bedroom and in the tile work in the wall of the bathroom, as well as the cracks in the outside brick wall. The witness Hallauer testified that he found plaster cracks in the south wall of the bedroom, in the ceiling of the hall, and in the east wall of the south bathroom. He also found cracks in the foundation wall and in the floor of the basement. The witness Wetzel testified that at the time of closing, a complaint was made by respondents to the appellant regarding cracks and defects although he did not remember just what was said. He did remember the appellant said he would see everything made right that was not right. In this same connection, it should be noted that Specification No. 21 states that the basement will be guaranteed dry for one year from completion of the job.

With respect to the placement of the footings on ground having insufficient bearing resistance, the evidence shows that at the time this house was constructed, Newmark, the appellant's son-in-law, was working for appellant as his supervisor of construction and was at the site daily as this house was erected; that before the footings were laid out, the inspectors from the University City Building Commission inspected the soil; that they inspected the soil by looking at it and no drill tests were made. The respondents' expert witness, David, testified that he inspected the house for the first time on June 10, 1958, was at the residence on several other occasions

preliminary to contracting with the respondents for certain repair work; that on these visits he was shown the interior and exterior cracks in the walls shown in the photograph exhibits, and that in his opinion the interior and exterior cracks in the southeast section of the building extending down to the footing line in the basement developed from the same source, namely, insufficient soil bearing below the foundation footings. David testified, over objection to the hypothetical question propounded to him, that in his opinion the conditions which he concluded to be the cause of the cracks when he examined the house in 1958 would have been present in 1956, and that this condition was the insufficient bearing resistance of the subsoil below the foundation. Mr. David then testified that to correct this situation it would be necessary to install eight individual concrete piers from the original footings to a more substantial base, and gave his recommendations as to the location of these piers; that his company had installed two piers and had been paid $468 at an item cost of $18 per lineal foot for a depth of 13 feet, the depth necessary for each pier; that this work was done by opening a section in the basement floor to expose the foundation footing and excavating below the foundation until they exposed an area of shale upon which the foundation was resting, that this shale or "mud rock" was a very dense, hard material and was the first firm foundation to be found. On cross-examination, David defined "shifting of soil" to mean a change in the original elevation of the soil and stated that during drought and climatic change it is almost impossible to anticipate whether or not soil would shift; that all a builder can do is to resort to the usual practices, the generally accepted routine, and use ordinary care to determine whether the soil upon which the footing is placed is strong enough to hold up the building. David agreed that assuming that " * * * the inspector went out, made the usual routine examination and found that the soil was sound enough

upon which a footing should be placed and to carry the kind of building * * * erected * * * this is the usual practice for a builder to resort to"; that often he had found that notwithstanding the fact that the soil was perfectly sound when the foundation and footing were placed, shifting of the soil occurred, and that damage occurred in most cases because such shifting was something no one could anticipate, but that in this case he found an abnormal amount of water at the footing elevation when he examined the soil June 10, 1958.

The evidence bearing on this question given by Mr. Kapellmann, the acting Building Commissioner of University City, was that he had succeeded to this position after the dates pertinent herein but before trial; that the records of his office indicated the first inspection for soil and footings was made on December 16, 1955; that the checkmark on the inspection sheet indicated the soil was okayed for footings; that the routine is to determine if the footing is to be placed on virgin soil and probings made with a ⅝-inch rod, and when soft spots are located, piers are required, and that there were no piers shown as required for this building. However, on cross-examination the witness stated he was not present when the former inspector made the inspections—any of them—and did not know of his own knowledge how many probings were made.

The witness Hallauer testified that he had been in the real estate business since 1928; that he had made several thousand appraisals in the past five or six years for insurance companies, building and loan associations, the States of Illinois and Missouri, the City of St. Louis, and various attorneys; that he had specifically appraised property to determine the difference between the market value of buildings as constructed and those "in the condition in which it is normal to expect to find such types of buildings" about thirty or forty times in the past five years. He further testified that he had personally inspected the house. Hallauer further testified that he had suggested that photographs be taken of the cracks in the house; that the photographic exhibits represented the cracks he saw upon inspection of the house and he detailed the condition of the house as it was when he first inspected it in June, 1957. It is necessary to set out his testimony with regard to the value of the house in order that it may be explicitly understood:

"Q. Did you make an appraisal of the value of the house as it was at that time?

"Mr. Sigoloff: I object to the question. No proper foundation has been laid upon which this witness could give testimony at this time.

"The Court: The objection is overruled.

"Q. (By Mr. Tzinberg) That calls for a yes or no answer. A. Yes.

"Q. Did you make that evulation (sic) of the—the evaluation of the building exclusive of the lot itself? Just the building? A. Yes.

"Q. Will you tell us what that evaluation was, as it is at the present time, and how you arrived at that?

"The Court: The present time or '56?

"Mr. Tzinberg: I am sorry.

"Q. (By Mr. Tzinberg) At the time you inspected the house. A. The condition it was in?

"Q. The condition it was in at that time, not at the present time.

"Mr. Tzinberg: Thank you, Your Honor.

"A. I found the present worth of the house at that time to be $21,125.00.

"Q. (By Mr. Tzinberg) Will you tell us how you arrived at that figure of $21,125.00. A. Yes, in my opinion,

the building in the condition which I would call normal and without any appearances of cracking and so forth, it had a value of $25,125.00."

Later in the record it appears that he was again asked to give its value.

"Q. (By Mr. Tzinberg) Tell us, in your opinion, what the value of the building in its condition in June of 1957 was. A. It would be $20,450.00.

"Q. Now, that is in both instances exclusive of the lot, is that correct? A. Exclusive of the lot."

There was nothing on this point in cross-examination, and after completion of Hallauer's testimony the respondents rested.

■■ We hold the respondents made a submissible case. This was a "building or construction contract", 17 C.J.S. Contracts § 11, p. 333, and the general rules with regard to the requisites and validity of contracts apply to such contracts, C.J., Vol. 9, § 8, p. 695. Surely it requires no citation to support the statement that in actions for breach of contract, proof of the contract and of its breach give rise to nominal damages regardless of whether actual damages were suffered or not. The cases are collected in the Missouri Digest, Vol. 10, Damages, ☞8 and 9. If the contract and its breach are substantiated by the evidence, nominal damages necessarily follow. H. W. Underhill Construction Company v. Nilson, Mo.App., 3 S.W.2d 399.

■ The pleadings admitted the existence of the contract, and there is therefore no doubt but that a submissible case was made on that issue. So far as the breach of the contract is concerned, there is no contention made by appellant that failure to complete the house in accordance with the specifications and failure to do the work in a skillful and workmanlike manner would not constitute a breach of the contract. The evidence is uncontradicted that certain of the specifications were not complied with. The specifications called for two basement drains and only one was installed; for copper flashing and aluminum was used; and for the basement to be dry for one year after completion and it is uncontradicted that it was not. The issue that was really joined in the trial was whether or not the work was done in a skillful and workmanlike manner. For the house to be so completed was an express specification of the contract and one that would have been implied had it not been expressly stated. Pitzer v. Hercher, Mo.App., 318 S.W.2d 397. With regard to the alleged faulty work done on the windows, doors, fireplace, concrete steps and walks, there was ample evidence to support a finding that the work done upon them was not accomplished in a skillful and workmanlike manner. With regard to the contentions of the respondents as to the placement of the footings on ground having insufficient bearing resistance, which resulted in settling and cracking of the foundation, brickwork, inside walls, basement walls and the basement floor, there is no disagreement among the parties as to the standard of care owed the respondents by the appellant. That degree of care was recited in the instructions as ordinary care; that is, the care that a skilled workman, in this instance a contractor, would exercise under like or similar circumstances. The disagreement is as to what conduct constitutes obedience to that degree of care. It is the appellant's position that if he had an inspection made by the office of the Building Commissioner, that was sufficient as a matter of law. We do not agree. Where the inspection made was not the normal and usual inspection and the appellant knew or had reason to know this fact, the reliance upon the inspection is not sufficient to constitute ordinary care as a matter of law. In the instant case, the evidence was that the normal and usual inspection of the soil by the inspectors was by probing with a ⅝-inch steel rod. We further find that the appellant's building supervisor, whose knowledge must be said to be that of the appellant, testified that the only inspections

that were made at this house were made by looking at the soil, and that he was there every day while the building was being erected. From this, there is certainly sufficient evidence that the jury could find the normal and usual inspection was not made in this case, and that the only inspection made was made by the inspector's coming to the house site and looking at the ground, and that this was known by the appellant by the imputation of the knowledge of his servant and employee to him. There was also the testimony of David given in response to the hypothetical question that would allow the jury to find that the conditions of the subsoil he found in 1958 were present in 1956, and from this to infer that had the normal and usual inspection been conducted, it would have been so discovered, and it could therefore be found that the appellant knew or should have known of this condition. This testimony then presented a submissible case to the jury upon the issue of whether or not this inspection, if it was found not to have been conducted in the normal and usual manner, was an inspection upon which the builder was entitled to rely, and by relying be said to have accomplished the work in a skillful and workmanlike manner and thus have exercised the degree of care required of him. It follows that there was a submissible issue made as to the breach of the contract. There was evidence of the contract and of the breach thereof, and since nominal damages at least would follow, we rule this point adversely to the appellant.

It is immediately apparent that in holding a submissible case was made, we have considered the testimony of the respondents' expert witnesses David and Hallauer. This is because the appellant's contentions as to the testimony of each witness must be overruled. David was asked this question, and the objection as set out below immediately follows:

"Now, Mr. David, assuming on the 27th day of June, 1956, in a house similarly situated on a lot of similar construction of the Hotchner residence at 7853 Balson had in it a jagged crack in the west and east walls of the front bedroom, shown in the exhibit that you have in your hand, the cracks in the bathroom tile, shown in one of those exhibits, the cracks in the mortar and bricks on the outside, shown in those exhibits, and assuming that thereafter that on or about the 10th day of June, 1958, you made an inspection of that residence and found those same cracks and other additional cracks in evidence, and assuming that at the time that you made the inspection in June of 1958 you concluded that the reason for those cracks was insufficient bearing resistance of the subsoil below the footing elevation of the building and that the building was settling because of that condition, can you, with reasonable engineering certainty and based on your experience as an engineer and your experience in this business for thirty years, tell whether or not the condition which you found in June 1958 was also present the 27th day of June, 1956?"

"Mr. Sigoloff: One moment, if your Honor please. We object to that question for several reasons, if the Court please, and they are as follows:

"One: It assumes facts about which this witness did not testify and is not supported by direct evidence.

"Two: His testimony giving an opinion is entirely based upon something which is remote. That the building was undertaken to be done—I believe the testimony shows was done in 1955 and finished in 1956, and to undertake to give or to answer a hypothetical question on something that is possible is entirely conjectural, remote and not supported by the record of the evidence.

"I say again it is assuming facts which are not proved in any respect."

At first blush the five subpoints presented in appellant's brief seem to go far beyond the objections made at the trial, and it is well settled that an objection to a hypothetical question not specifically raised at the trial will not be considered upon appeal. Bragg v. Metropolitan Street Railway Company, 192 Mo. 331, 91 S.W. 527; Buzan v. Kansas City Rys. Co., Mo.App., 212 S.W. 905. However, the subpoints briefed by appellant are in reality, when stripped of their verbiage, mere repetitions of the objections made at the trial. There is an attempt made in one of them to supply a part of that which is fatally missing from appellant's objection by stating a fact said to have been assumed, but since that contention was not specifically included in the objection at the trial, we will disregard it. An objection to a hypothetical question is legally sufficient and effective to present and preserve error only if the objection specifically points out what has been assumed or included without evidentiary basis and what essentials have been omitted. See Denney v. Spot Martin, Inc., Mo.App., 328 S.W.2d 399, where the point is exhaustively researched. Counsel did not state what should have been added to the question or deleted from it when he made his objection, and cannot now be heard to do so. Insofar as the objection states that "* * * to give or to answer a hypothetical question on something that is possible is entirely conjectural, remote * * *" is concerned, the obvious answer is that the question does not ask for what is possible. The witness was asked if he could, with reasonable engineering certainty, tell whether the condition he found to cause the cracks, etc. which he observed in June, 1958, was also present in June, 1956. Neither did he answer as to what was possible. He stated that he could, and then gave an opinion that was definite, and which contained no such qualifying word as "possible." His answer was that the developments at both times were the result of the same thing, which was insufficient bearing resistance of the subsoil. So far as remoteness is concerned, we do not think that objection sound, but instead would go to the weight to be given his testimony.

Insofar as appellant's contention that the question was improper because the witness was asked to express an opinion upon the questions directly in issue and that David's answer was a conclusion is concerned, counsel misunderstands the function of expert testimony. It is not a valid objection to proper expert testimony that the answer states a conclusion of the witness as to a factual situation, City of St. Louis v. Kisling, Mo., 318 S.W.2d 221, and although it is on the very question to be ultimately decided by the jury, expert testimony is to be given the weight and credit the jury deems it entitled to, as is any other testimony. Scanlon v. Kansas City, 325 Mo. 125, 28 S.W.2d 84, loc. cit. 95. We find no merit in appellant's contentions regarding the hypothetical question.

The appellant moved to strike the testimony of the witness Hallauer, and assigned as reversible error the refusal of the trial court to do so. The motion made at the time of trial, and that presented in the motion for new trial, is not nearly as extensive as the points which the appellant now raises in his brief, at least one of which goes far beyond anything stated in the objection or the motion for new trial. The evidence was that the witness had been in the real estate business since 1928; that he had made several thousand appraisals in the past five or six years for insurance companies, building and loan associations, the States of Illinois and Missouri, the City of St. Louis, and various attorneys; that he had specifically appraised property to determine the difference between the market value of buildings as constructed and those "in the condition in which it is normal to expect to find such types of buildings" about thirty or forty times in the past five years. He further testified that he had personally inspected the house; and that he suggested that

photographs be taken of the cracks in the house and he identified the photographs taken as representing the cracks he saw upon inspection of the house. Accordingly, it is clear that the witness did not, as appellant urges, base his testimony upon an examination of the photographs of the building but based it upon his personal examination. It is equally clear that, contrary to appellant's contention, he did not lack proper qualification as an expert. He testified he had three methods of arriving at figures on costs and values: by talking to contractors, by studying periodicals of his business, and by pricing houses and individual items when actually placed on sale or when prices are quoted in advertising literature. Appellant complains specifically of each of the three methods and urges that since Hallauer had not actually done any building of similar structures for some time, a point upon which appellant extensively cross-examined, his testimony was therefore of no probative value. We do not agree. He was actually engaged in the appraisal business and was qualified as an expert in that field. He need not be engaged in the building business. How he arrived at his figures could only go, if appellant's contention has any merit at all, to the weight of his testimony and that is a jury matter beyond our province. We find no merit in appellant's contentions in regard to the trial court's action in refusing to strike Hallauer's testimony.

The case was submitted upon Instruction No. 1, the respondents' verdict directing instruction. It reads:

"The Court instructs the jury that, under the law, there is an implied condition in every building contract that the work will be done in a skillful and workmanlike manner.

"The Court further instructs the jury that if you find and believe from the evidence that on or about the 7th day of November, 1955, plaintiffs contracted with defendant to purchase from defendant Lot 4 of Devonshire, together with a residence to be constructed thereon, for the price and sum of Twenty-six Thousand Five Hundred Dollars ($26,500.00); if you further find and believe from the evidence that at the time of said agreement, defendant, or his agent, gave to plaintiffs copy of specifications for said residence building to be constructed; and if you further find that defendant did construct a residence on said lot and that, thereafter, on or about the 27th day of June, 1956, title to said property was transferred to plaintiffs and plaintiffs paid the entire amount due from them for said residence and the lot upon which the same was erected; and if you further find that said residence building was not completed in accordance with the plans and specifications, and that said residence building was not constructed in a skillful and workmanlike manner, then your verdict should be for the plaintiffs and against the defendant."

 There are ten subassignments of reversible error dealing with the above instruction, most of which deal with the contention that there is no evidence to warrant submission of the case in the conjunctive manner in which it is done in this instruction. The discussion of evidence found in the first portions of this opinion dealing with whether or not a submissible case was made disposes of this point adversely to the appellant. The appellant then contends that the instruction gives the jury a roving commission to return a verdict without any specific findings. This contention also must be ruled adversely to appellant. The instruction requires the jury to find there was a contract, although there was no contention otherwise, and also required the jury to make the two specific findings of fact required by the conjunctive submission constituting breach of the contract. There is authority that by the conjunctive nature of the submissions made, the respondents actually went further than they were required to do. Pitzer v. Herch-

er, supra; Baerveldt & Honig Construction Co. v. Szombathy, 365 Mo. 845, 289 S.W.2d 116, but the appellant cannot complain of that. The appellant next contends that the instruction is prejudically erroneous in that it fails to set out any of the circumstances the jury should find as necessary predicates to the ultimate determination. While it may be better practice to hypothesize the facts upon which the ultimate findings are based (see the instruction in Pitzer v. Hercher, supra, where this was done) it surely requires no citation to support our decision that the ultimate findings, so long as they contain the essential elements of the cause of action, are all that need be found by the jury. We do not think it necessary for this instruction to then restate these ultimate findings by specifically requiring the jury to find that these two submissions constitute a breach of the contract; that is, it was not necessary to require the phrase, "and that such failure to complete in accordance with the plans and specifications and failure to complete in a skillful and workmanlike manner, if you so find, constitutes a breach of the contract", or some similar phraseology after the conjunctive submissions. That may or may not be necessary in a given set of facts, but certainly not here, where there was never any contention raised by appellant that failure to complete in accordance with the plans and specifications and failure to do the work in a skillful and workmanlike manner would not constitute a breach of the contract. Clearly under these facts such a contention is untenable. The assignments of reversible error dealing with the giving of Instruction No. 1 are ruled adversely to the appellant.

■■ Under the rules of civil procedure in this state, Rules of Civil Procedure 79.03, V.A.M.R., if specific objections to an instruction were not made at the trial before submission of the case to the jury (and in the instant case the objections were general) the specific allegations of instructional error must be set forth in the motion for new trial in order to preserve the alleged error for review. Since there was no objection made in the motion for new trial concerning the failure of this instruction to hypothesize a finding of damage, we will not rule that point.

■■ The appellant also raises as error requiring reversal of this case the failure of the trial court to give certain instructions offered by the appellant. The transcript discloses that the appellant offered Instructions C through I, which were refused by the trial court. In his brief, the appellant abandons any contentions of reversible error as to any instructions except B, C, and E. Instructions B and C told the jury they could not consider any evidence on the issues of improper placement of footings and faultily constructed windows, doors, the fireplace, concrete steps and walls and other portions of the residence. What we have stated herein with regard to the respondents' making a submissible case disposes of those points. Instruction E was merely another burden of proof instruction and a proper burden of proof instruction had already been given. We find no reversible error with respect to the trial court's actions in refusing appellant's offered Instructions B, C and E.

This judgment in this case must be reversed and the cause remanded for reversible error in the giving of Instruction No. 7, the measure of damage instruction. That instruction reads as follows:

"Instruction No. 7

"The Court instructs the jury that if you find in favor of plaintiffs under Instruction No. 1, then you should find for plaintiffs in such an amount as will compensate plaintiffs for the difference in value as of June 27, 1956, between the residence building, as constructed, and the value of said building had it been constructed in accordance with the plans and specifications and in a skillful and workmanlike manner."

■■ There are seven subpoints raised by the appellant in his brief under the assignment of error dealing with this instruction. The first two contend the instruction is a comment on the evidence and an assumption that there was evidence to support the submissions of failure to construct in accordance with plans and specifications and in a skillful and workmanlike manner, when in fact there was no such evidence. We have already held that this record does disclose such evidence. In another subassignment it is urged that this instruction constitutes a direction to the jury to find for the respondents regardless of any facts in the case. We cannot agree. By its reference to Instruction No. 1, a finding for respondents under that instruction is clearly necessary before the jury can award damages for them under Instruction No. 7. Neither can we agree that the instruction is confusing and misleading in failing to tell the jury within what period of time they could determine the difference in value of the building. On the contrary, the point in time is clearly stated in the instruction as that of June 27, 1956. The appellant then contends that no issue was raised by the pleadings as to valuation differences and so no issue was made for submission to the jury. The pleadings allege damage by reason of breach of contract and what form that damage took was a matter of proof and proper instruction so long as the allegation of damage is sufficiently broad to include that proved and instructed upon, and in this case that is clearly so.

■ We are compelled to reverse this judgment and remand the case for further proceedings because, as appellant contends, there is no evidence of any difference in the value of the building on June 27, 1956, and its value on any other date. The evidence on this point was given by the witness Hallauer and as recited earlier herein in the summary of the evidence his testimony was that he first inspected the house in June, 1957 and a reference to those portions of his testimony set out in the recitation

of facts earlier in this opinion clearly illustrates that his testimony is only as to the difference in value of the residence as he found it in June, 1957 and the value of the house " * * * in the condition in which it is normal to expect to find such types of buildings." His testimony was not of the value as of the date specified in Instruction No. 7. It is true that on redirect examination of the appellant the following appears:

"Q. Mr. Hallauer testified concerning the value of the building in this condition in 1957, I believe he said—

"Mr. Sigoloff: Was he there in 1957?

"Mr. Tzinberg: He testified as to the value in 1956; no."

It is therefore clear that counsel for both parties assumed that Hallauer had given testimony as to the difference in the value of the building as it was completed in June, 1956 and the value as of such date had it been completed in accordance with plans and specifications and with proper skill and workmanship. Hallauer did not do so. His testimony is in fact void of any reference to value as of June, 1956 and is in fact based upon the value when he inspected it in 1957. Their incorrect assumption cannot supply the required and missing testimony. The instruction is therefore without evidence to support its hypothesis of value as of June, 1956 and the giving of it constitutes reversible error. It should also be noted that there might be some difference between the value of a house "in the condition in which it is normal to expect to find such types of buildings" as given by Hallauer and " * * * the value of said building had it been constructed in accordance with the plans and specifications and in a skillful and workmanlike manner" as hypothesized in Instruction No. 7. Upon retrial, better practice would require the witness' answer to more generally conform to the hypothesization made in the measure of damage instruction.

However, there was a finding of a contract and the breach thereof, and thus the jury did determine that the appellant was liable to respondents for breach of contract. What was not determined was the extent or amount of that liability. Since we have determined that this judgment must be reversed only because the evidence failed to support the giving of Instruction No. 7, this case will be remanded for further proceedings upon the issue of damages only, § 512.160 RSMo 1949, V.A.M.S. It is therefore regrettably necessary to extend this opinion to determine the proper measure of damages in this case since that matter will very likely arise on retrial.

In C.J., Building and Construction, Contracts, Vol. 9, § 149, pages 810–811, it is said, citing Missouri cases as indicated:

"In general the measure of damages occasioned by failure strictly to perform a building contract is, in the case of substantial performance, the difference between the value of the work done or building erected and the value of that which was contracted for. (Simons v. Wittmann, 113 Mo.App. 357, 88 S.W. 791.) By some authorities the difference is arrived at by taking the reasonable value of the extra work occasioned the owner in making the building conform to the contract stipulations (Walter v. Huggins, 164 Mo.App. 69, 148 S.W. 148; Spink v. Mueller, 77 Mo.App. 85; Wright v. Sanderson, 20 Mo.App. 534), or the necessary cost of remedying the defects or omissions in performance (Haysler v. Owen, 61 Mo. 270) particularly where the defects may be remedied at a reasonable expense, or where the work is not done in general conformity with the specifications but deviates from them either in the plan or in the materials used. (Walter v. Huggins, supra.)"

In Walter v. Huggins, 164 Mo.App. 69, 148 S.W. 148, 150 cited in the excerpt from Corpus Juris set out above, the court reviewed the cases from this and other jurisdictions and quotes with approval from White v. McLaren, an early Massachusetts case found in 151 Mass. 553, 24 N.E. 911. as follows:

"In determining such damages, different elements are proper for consideration in different cases, according to the nature of the defect. Sometimes the measure of damages is the necessary cost of making the work according to the specifications. * * * The question ordinarily is: How much less is the building fairly worth than it would have been if the contract had been performed?"

The court at 164 Mo.App. 69, local citation at page 80, 148 S.W. 148, at page 151, summed up its review of the cases by stating an old but still vital legal maxim: "The cases we have reviewed show that, in the choice of rules for the measurement of damages in building cases, the old saying that circumstances alter cases has peculiar force." We are compelled to the same conclusion. One of the most important of the circumstances referred to is the character of the damage when considered in the light of the total amount involved. If the damage alleged can be characterized as insignificant when viewed in the light of the total project, as for an extreme example a $50 or $100 damage on a building project the contract for which is $50,000, then it would be obviously faulty to require the testimony to be confined to the difference in value as the building was completed and as it should have been completed under the contract. On the other hand, consider the case of damage which constitutes a substantial portion of the project cost. In that instance the cost of repair might not adequately compensate for the overall loss for in such projects the actual value, if completed as it should have been, might well be more than the sum of its individual parts. In the instant case the damage, both as alleged and proved, was extensive in character and bore a substantial relationship to the compensation called for under the

contract and appellant's contention that the damage was insignificant is without merit. As an abundance of caution we reiterate that each case must stand upon its own factual situation, but under the factual situation shown in this case Instruction No. 7 correctly stated the measure of damages.

In view of the disposition of this case herein made, it is unnecessary to rule upon the appellant's remaining contention that the damages were excessive.

The judgment is reversed and this case remanded for further proceedings upon the issue of damages only. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion of BRADY, C., is adopted as the opinion of this court. The judgment is reversed and the cause remanded to the trial court for further proceedings on the issue of damages only.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.