Lavina M. PITZER (Plaintiff), Respondent,

v.

Marvin O. HERCHER (Defendant), Appellant.

No. 29984.

St. Louis Court of Appeals. Missouri.

Dec. 2, 1958.

Irvin D. Emerson, Hillsboro, for appellant.

Dearing, Richeson & Weier, H. L. C. Weier, Hillsboro, for respondent.

ANDERSON, Judge.

In this action plaintiff has brought suit for damages alleged to be the result of the negligent and unworkmanlike manner in which defendant performed a contract for the erection of a house for plaintiff. Defendant filed a counterclaim for the amount alleged to be due and owing to him under said contract. There was a verdict and judgment for plaintiff on her cause of action for the sum of $800, and against defendant and in favor of plaintiff on defendant's counterclaim. From this judgment, defendant has appealed.

The petition alleged that plaintiff and defendant entered into a contract whereby defendant agreed to erect for plaintiff in a substantial and workmanlike manner a five room frame house with bath on a 32' x 32' concrete block foundation for which plaintiff agreed to pay defendant the sum of $9,000.

It was then alleged that defendant, in compliance with said contract, commenced work on said residence; that said defendant laid the foundation of said building and partially erected the first story thereof; that upon the completion of the foundation plaintiff paid defendant the sum of $3,000, and thereafter paid him the sum of $1,000; and that said sums were in payment of all materials and the labor performed upon said premises up to the 23rd day of February, 1957.

It was then alleged that the defendant had erected said building in an unskillful and negligent manner in that the measurements of the walls were inaccurate and the frame portion of the structure not properly positioned upon the foundation, causing the same to be in a dangerous and unworkmanlike condition which would cause the walls to sag and crack, and the house to become useless and untenantable.

The prayer of the petition was for damages in the sum of $5,000, and costs.

Defendant, in his answer, admitted making the contract as alleged in plaintiff's petition. He then alleged that he entered upon the premises of plaintiff in compliance with the contract, put in the foundation and erected a building thereon; that the building was under roof and the windows set; that he did receive the sum of $4,000 in payment for materials and labor performed upon said contract. Defendant denied that said sum of $4,000 was payment in full for the said labor and materials. The answer denied that the work was done in an unskillful and negligent manner, as alleged in plaintiff's petition; and denied that plaintiff had been damaged in the sum of $5,000. The prayer of the answer was that defendant be discharged with his costs.

The counterclaim alleged the making of the contract, the entry upon the plaintiff's premises to perform same, and the value of the materials furnished and the labor expended to be $4,706.12. A legal description of plaintiff's premises was then set out. Allegation was then made of the filing with the Circuit Clerk of a true and just account of the labor and materials furnished, which was intended to be a lien upon said premises.

It was then alleged that plaintiff, on or about the 9th day of March, 1957, refused to allow defendant to perform the contract, and that his claim was for the reasonable value of the materials, together with his services and labor which actually entered into said construction, which was in the sum of $4,706.12—as set out in the statement of account filed with the Circuit Clerk. It was alleged that a demand on plaintiff for said amount due was made but that plaintiff failed and refused to pay same, and that there was due defendant the sum of $706.12. Judgment was prayed in said amount, to be declared as a prior and superior lien upon the real estate in question.

At the request of plaintiff, the court instructed the jury as follows:

"Instruction No. 1

"The Court instructs the jury that if you find and believe from the evidence that heretofore the defendant entered into a contract with plaintiff to construct and erect a five room frame house with bath on a 32 foot by 32 foot concrete block foundation in a substantial and workmanlike manner, and that thereafter defendant entered upon the premises of the plaintiff, erected the foundation and partially erected the frame dwelling thereon and that defendant received $4,000.00 from the plaintiff in payment of materials and labor used in the construction of said building; and if you further find that the defendant failed to erect said building in a substantial and workmanlike manner, but instead erected it so that the measurements of the walls were inaccurate and the frame portion of the structure was not properly positioned upon the foundation and that

this manner in which the building was erected caused the same to be in an unworkmanlike and defective condition so that it could not be completed in that condition as a substantial and useable house according to the contract, then you will find the issues as to plaintiff's cause of action in favor of plaintiff and against defendant."

"Instruction No. 2

"The Court instructs the jury that if you find for the plaintiff and against the defendant under the evidence and under the other instructions given by the Court, then you should assess plaintiff's damages, if any, in such sum which you believe from the evidence it would reasonably take to make the building conform to what it should be under the requirements of the contract at the time defendant stopped further work upon it."

Appellant's first point is that Instructions 1 and 2 gave the jury a roving commission to find the terms and specifications of the alleged contract which were breached by the defendant.

 The terms of the contract are not in dispute. By said contract, defendant agreed to erect for plaintiff a five room house with bath on a 32' x 32' concrete block foundation, for which plaintiff agreed to pay defendant the sum of $9,000. These were the terms pleaded by plaintiff in her petition, and by defendant in his counterclaim. The evidence of both parties showed the contract to be as alleged. An implied condition of said contract was that the work would be done in a skillful and workmanlike manner. Baerveldt & Honig Construction Co. v. Szombathy, 365 Mo. 845, 289 S.W.2d 116; Brush v. Miller, Mo.App., 208 S.W.2d 816; Kennedy v. Bowling, 319 Mo. 401, 4 S.W.2d 438; John O'Brien Boiler Works Co. v. Sievert, Mo. App., 256 S.W. 555. Plaintiff's action was for a breach of the implied agreement, and

the instructions complained of plainly submitted this issue to the jury. There was ample evidence to support these instructions. We will not give a detailed review of this evidence since there is no contention on the part of appellant that there was no substantial evidence to show that the work was defective in the respects hypothesized in Instruction No. 1. Instruction No. 2 submitted the proper measure of damages, and was supported by substantial evidence. Talbot-Quevereaux Construction Co. v. Tandy, Mo.App., 260 S.W.2d 314.

Appellant's next complaint is of the remarks made by the court during the course of the trial. The first of these remarks occurred during the cross-examination of plaintiff. At that time, defendant's counsel asked plaintiff how many houses she had purchased during the year. She replied that she had purchased one. The following then occurred:

"Q. In February of 1956, didn't you purchase—

"Mr. Weier: I object to that, it is not pertinent to any issues.

"Mr. Emerson: This is cross-examination. I think it goes to the issue here as to her credibility, as to knowledge of the entire situation.

"The Court: Knowledge of what situation?

"Mr. Emerson: She said she only purchased one piece of property. I was asking her if she recalled purchasing some other pieces of property.

"The Court: Do you think it would be pertinent how many coats she bought the last year?

"Mr. Emerson: Your Honor, this is real estate. I just asked her if she didn't think $9,000 wasn't cheap for thirty-two by thirty-two house.

"The Court: You want to qualify her, is that it, Mr. Emerson?

"Mr. Emerson: I want to bring out her knowledge of houses.

"The Court: Oh, go ahead."

The next remark of the court complained of by appellant occurred later during the cross-examination of plaintiff. Counsel for defendant attempted to cross-examine plaintiff about a tractor she had sold to Mr. Walter Martin, one of plaintiff's witnesses. When an objection to the materiality of this line of questioning was made, counsel for plaintiff stated that it went to the plaintiff's credibility as a witness. The court then said: "Let's get on to the business here, let's talk about the damages and your counterclaim. * * let's stay on the case and not get everything else in here."

The next remark complained of was when defendant sought to introduce a certain deed to property which plaintiff had purchased. This deed was not to the property involved in this suit. The court ruled the evidence inadmissible, saying: "What difference does it make if she bought any other property or not?"

The next remark complained of occurred during the cross-examination of defendant. The latter was being interrogated with reference to the manner of construction which he employed in building the house. There then appears the following:

"Q. You say you agreed to build this house as you would your own? A. That is correct.

"Q. In constructing your own house would you put single headers over the windows? A. It was not completed.

"Mr. Emerson: I object to that, he has testified to that on direct examination.

"The Court: Aren't you going to let him cross-examine any? Let him cross-examine. Go ahead."

We do not believe the remarks of the court complained of were of such a character as would tend to prejudice the jury against defendant or lead the jury to believe that the judge sympathized with plaintiff's cause. The remarks merely show a mild impatience at the slow progress of the trial, and the wide range of the cross-examination which had no bearing on the issues framed by the pleadings. The rule to be applied is that stated by this court in Stewart v. American Ry. Express Co., Mo.App., 18 S.W.2d 520. In that case the trial court, in refusing to rebuke plaintiff's counsel for an alleged improper remark, stated: "No; there will be no rebuke. Let's get along with the case. This is cross-examination." This court held there was no reversible error in the remarks. The court said (loc. cit. 525):

"While it is highly to be desired that the trial court should so conduct a trial as not to indicate any bias in the trial of the case before him, it is but human that a trial judge will on occasion become somewhat impatient at the slow progress made in the trial of a case and make a remark such as is complained of here, but that does not justify a reversal of a case which may happen to be determined against the party whose attorney was the subject of the expressed impatience."

It is the duty of the trial judge to see that a trial over which he is presiding is not unnecessarily delayed, and that counsel be kept within reasonable bounds in the examination of witnesses. We are convinced that this was all the trial court was attempting to do in the case at bar.

Finding no error in the record, the judgment is affirmed.

RUDDY, P. J., and WOLFE, J., concur.