**Eugene PORTMAN and Ellen Portman,
Appellants,**

v.

**SINCLAIR OIL COMPANY, Respondent.**

No. 57310.

Supreme Court of Missouri,
Division No. 1.

Feb. 10, 1975.

Padberg, Raack, McSweeney & Slater, Edward P. McSweeney, St. Louis, for plaintiffs-appellants.

Wilburn A. Duncan, Anthony F. Vaiana, St. Louis, for respondent.

BARDGETT, Presiding Judge.

This is an action by Eugene and Ellen Portman, plaintiffs-appellants, against Sinclair Oil Company, defendant-respondent, for damages to their home and its contents resulting from a fire. The petition prayed for judgment of $80,000. The jury verdict and judgment was in favor of defendant and plaintiffs have appealed. Notice of appeal was filed prior to January 1, 1972. This court has jurisdiction. Art. V, sec. 3, Mo.Const.1945, V.A.M.S.; sec. 477.040, RSMo 1969, V.A.M.S.; Art. V, sec. 31(4), Mo.Const.1945, as amended. The parties will be referred to as they appeared in the trial court.

Plaintiffs' petition alleged, inter alia, that on approximately January 7, 1970, and January 15, 1970, defendant, by and through its employees, worked on plaintiffs' furnace and on each occasion assured plaintiffs that the furnace was functioning properly and could be used in safety; that "as a direct and proximate result of the carelessness and negligence of defendant, a fire occurred at the home of plaintiffs on January 17, 1970, causing damage to the home, furnishings and other property of plaintiffs". Defendant's answer as to the allegations set forth was a general denial.

At the close of plaintiffs' evidence, defendant, by leave of court and over plain-

tiffs' objection, amended its answer so as to plead the contributory negligence of the plaintiffs. The amended answer alleged that plaintiffs caused or directly contributed to cause whatever damages they sustained "by plaintiffs' own carelessness and negligence, in storing, stacking, hanging and placing clothing, plastic bags and other cumbustible material in close proximity to the furnace and its appurtenances mentioned in plaintiffs' Petition."

On this appeal plaintiffs contend that (1) the court abused its discretion in allowing defendant to amend its answer and plead contributory negligence for the first time at the close of plaintiffs' evidence, and (2) that the court erred in giving instruction No. 4, the contributory negligence instruction, because (a) the plaintiffs' submission was in the nature of strict liability based upon an implied warranty of fitness and suitability to which contributory negligence is no defense, and (b) instruction No. 4 authorized a jury verdict for defendant if they found only that plaintiffs were careless in hanging clothing near the furnace even if said carelessness was completely unconnected with the cause of the fire.

Defendant does not contend that plaintiffs failed to make a submissible negligence case but rather that if plaintiffs' verdict-directing instruction, instruction No. 2, constitutes a submission on breach of implied warranty of fitness and suitability of the services defendant agreed to perform, then the judgment for defendant should be affirmed because under Missouri law a person who furnishes services is not liable for an alleged breach of an implied warranty of fitness nor in strict liability in tort. It appears that defendant makes this contention here because one of plaintiffs' contentions with reference to defendant's contributory negligence instruction is that contributory negligence is no defense to implied warranty or strict liability in tort and therefore the giving of any contributory negligence instruction would be error.

The facts in evidence upon which plaintiffs rely for recovery against defendant are, in part, that defendant agreed to and did undertake to service and, if necessary, repair plaintiffs' furnace on January 8 and 15, 1970; that in late November or early December 1969 the furnace would not turn on automatically and plaintiffs had to push a relay button to turn the furnace on; that when the button was pushed the furnace door would fly open, a loud noise occurred, and smoke and flames would shoot out of the furnace door opening; that in January the furnace would not turn on even when the relay button was pushed; that Mrs. Portman called defendant and defendant's serviceman came to plaintiffs' home on January 15, 1970; that Mrs. Portman told the serviceman about the problem concerning the smoke and flames shooting out the furnace door; that the serviceman worked on the furnace and then tested it by pressing the relay button and the door flew open and smoke and flames belched out; that the serviceman continued to work on the furnace and when he left he told Mrs. Portman the furnace was fixed, safe to operate, and needed no new parts. A professional engineer testifying in plaintiffs' case stated that he made an inspection shortly after the January 17 fire; that as a result of the testing it was his opinion that the fire was caused by a blowback, or low-grade explosion. This would cause the furnace door to open and flames and smoke to shoot out which would ignite something with a low ignition point outside the furnace. He testified that the blowback was caused by a dirty filter screen which caused an irregular flow of oil to the combustion chamber and which allowed unburned oil to accumulate which, in turn, would result in the blowback at the time of the next ignition. He testified that the dirty oil screen or filter caused the fire in plaintiffs' home. He inspected for other possible causes of the fire and found none.

Plaintiffs testified that they stored clothing in plastic garment bags in their base-

ment. These bags were hung "close to" the furnace stack and were completely burned up in the fire. The bags had been in the same place since about March 1968. According to Mrs. Portman, defendant's serviceman told her that it was all right for the bags to be hung where they were.

While the evidence is not clear as to just how close the garment bags were to the furnace stack or flue, it appears that they were about fourteen inches from it. There is no evidence that the bags were in contact with the stack or flue. There was evidence that it is possible that some types of plastic bags would ignite if they came in contact with a furnace stack or flue that registered a temperature on the outisde surface of the stack of 325 degrees Fahrenheit. There was no evidence as to whether or not the plastic garment bags would or could ignite if they did not come into contact with ·the stack or flue but were merely "close to" the stack. In short, there is simply no evidence in this case which would support a finding that the fire started as a result of the garment bags being "close to" the furnace stack or flue.

Defendant's evidence, in the light most favorable to defendant, was that the oil filter, although somewhat dirty, was not clogged and would not cause any malfunction of the furnace and could not have caused a blowback to occur and that no blowback occurred when its serviceman tested the furnace on January 15, 1970. Defendant's serviceman testified that when he serviced the furnace on January 15, 1970, he cleaned certain relay points, adjusted the electrodes, and replaced a cover on the nozzle assembly which had prevented proper fuel burning and caused some smoking, and that when he left the furnace was operating properly.

Plaintiffs submitted their case by instruction No. 2 as follows:

"Your verdict must be for plaintiffs if you believe:

"First, defendant performed work on the oil burning furnace owned by plaintiffs, and

"Second, plaintiffs reasonably relied upon defendant's ability to perform such work with proper skill and workmanship, and

"Third, defendant failed to use proper skill and workmanship in its work on said oil burning furnace, and

"Fourth, as a direct result, plaintiffs were damaged, unless you believe plaintiffs are not entitled to recover by reason of Instruction No. 4."

Defendant submitted its defense of contributory negligence by instruction No. 4 as follows:

"Your verdict must be for the defendant if you believe:

"First, plaintiffs caused or permitted clothing in plastic bags to be and remain in close proximity to the furnace and its appurtenances; and

"Second, plaintiffs were thereby negligent; and

"Third, such negligence of plaintiffs directly caused or directly contributed to cause any damage plaintiffs may have sustained."

Defendant insists that plaintiffs' submission as embodied in instruction No. 2 was one of negligence and not a submission on breach of implied warranty of fitness nor one of strict liability in tort. The court believes defendant's analysis of instruction No. 2 to be correct.

Although plaintiffs identify instruction No. 2 as MAI 25.03 modified— MAI 25.03 being a breach of warranty of fitness for particular use instruction—the modification indulged in by plaintiffs converted the instruction to a submission of negligence. This is so because paragraph third submitted a breach of duty "to use

proper skill and workmanship in its [defendant's] work on said oil burning furnace." The degree of care to which a serviceman is held under an instruction submitting a duty of "proper skill and workmanship" is by definition "ordinary care; that is, the care that a skilled workman . . . would exercise under like or similar circumstances." Hotchner v. Liebowits, 341 S.W.2d 319, 326 (Mo.App. 1960). See also Pitzer v. Hercher, 318 S.W.2d 397 (Mo.App.1958). Thus the submission essentially was whether the defendant exercised the degree of care in performing its work as would be expected of an ordinarily careful and prudent workman under the same or similar circumstances. In short, the issue presented was whether defendant was negligent in inspecting and servicing the furnace when, and if, it failed to discover and remedy the alleged clogged fuel filter.

MAI 25.03 does not submit any questions to the jury with respect to the defendant's exercise of any degree of care in the manufacturing of a product. The "ordinary care" portion of MAI 25.03 relates to a defendant's knowledge of the use to which the product will be put by the purchaser, not to any questions relating to the skill or care used by the seller or manufacturer in the making of the product.

Plaintiffs cite Morrow v. Caloric Appliance Co., 372 S.W.2d 41 (Mo. banc 1963); Keener v. Dayton Electric Mfg. Co., 445 S.W.2d 362 (Mo.1969); and Williams v. Ford Motor Co., 454 S.W.2d 611 (Mo. App.1970), in support of their contention that instruction No. 2 is a breach-of-warranty or strict-liability-in-tort instruction and for the proposition that these two theories are applicable to the instant case.

This case involves the performance of services only. It does not involve a product or parts manufactured, sold, or constructed by the defendant. The cases cited are not in point. Having noted that the plaintiffs' petition was in negligence and

have held instruction No. 2 to constitute a negligence submission, the court need not decide whether the theories of strict liability apply to the rendering of services in this case. Instruction 2 has been set forth to demonstrate that, on its face, it is a submission of negligence. Whether or not that instruction is correct or adequate as a proper negligence submission in this case is not in issue and is not decided here.

Plaintiffs contend that defendant's instruction No. 4, the contributory negligence instruction, is erroneous because it authorizes a defendant's verdict if the jury finds only that plaintiffs were careless in having the garment bags near the furnace even if their presence was completely unconnected with the cause of the fire in the house.

Defendant says instruction 4 was correct because it required a jury finding that plaintiffs' negligence in hanging the garment bags near the furnace "directly caused or directly contributed to cause *any damage* plaintiffs may have sustained." (Emphasis added.)

■ Plaintiffs' contention must be sustained. There was substantial damage done to the house and its contents by the fire, and the garment bags containing clothing were completely destroyed by the fire. Instruction 4, however, completely ignores the primary issue which was the cause of the fire. It authorizes a defendant's verdict upon the mere finding that the presence of the clothes near the furnace contributed to cause "any damage". The clothes were destroyed in the fire. It may be that if they had been hanging at the opposite end of the basement they would not have been damaged; but, regardless of where they were hanging and regardless of whether it was negligent or not to hang them where they were, the act of hanging them in this particular place could not be the basis of a defendant's verdict based upon contributory negligence, unless their presence at that particular place contributed to cause the fire.

Instruction No. 4, as drawn, directs a verdict for the defendant even though the jury believes that the defendant was negligent in failing to discover and remedy the clogged oil filter; that the negligence of defendant caused the blowback and the fire in the house; and that the presence of the clothes near the furnace did not cause or contribute to cause the fire in the house, *if* the jury finds that the mere presence of the clothes near the furnace resulted in some damage—damage to the clothing.

In Doggendorf v. St. Louis Public Service Co., 333 S.W.2d 302 (Mo.App. 1960), the court held it was error to give a rear-end collision instruction offered by plaintiff where the instruction ignored the principal factual issue in the case, saying at loc. cit. 305:

> "As plaintiff's verdict-directing instruction was drawn, it authorized the jury to find in favor of plaintiff even if they discredited all the evidence offered by him, and believed the defendant's evidence. And, as was said in Pijut v. St. Louis Public Service Co., Mo., 330 S.W. 2d 747, 752, ' . . . This cannot be permitted. To allow plaintiff in this case this flexibility would be to permit her to obtain a verdict regardless of the manner in which the collision occurred . . . .' "

The collision in *Doggendorf* is analogous to the fire in the instant case, and instruction 4 suffers from the same infirmity as did plaintiff's instruction in *Doggendorf*. Instruction 4 authorizes a verdict for defendant regardless of why or how the fire occurred merely upon the finding that after the fire occurred some of the damage (the burning of the clothes) was caused or was contributed to by the presence of the clothes in a particular place.

Instruction No. 4 is noted as being MAI 32.01 modified. MAI 32.01 is principally designed for automobile accident cases. It concludes with the words "such negligence of plaintiff directly caused or directly contributed to cause any damage plaintiff may have sustained." These words are appropriate in an automobile case because the context of the instruction leaves no room for doubt that, except for the contributory negligence of plaintiff, there would have been no damage because there would have been no accident. In the instant case, however, such phraseology authorizes a defendant's verdict even though the burning of the clothes—damage—was not found by the jury to have contributed in any respect to the cause of the fire. For the error noted in instruction No. 4, the judgment must be reversed and the cause remanded for a new trial.

The court does not know, of course, what the evidence or theories on retrial will be, but it is observed that in addition to the error noted in instruction No. 4 there is also no required finding of knowledge on the part of plaintiffs as to the danger, if any there be, of flames emitting from the furnace door or of the danger in hanging clothes near the furnace after the furnace had been serviced by defendant's serviceman. In this connection, the parties may wish to consider what is said in Koirtyohann v. Washington Plumbing & Heating Co., 471 S.W.2d 217, 221[5] (Mo.1971), in reference to MAI 32.01 (formerly 28.01 in MAI, First Edition) should defendant desire to modify that or some other instruction for use in this case.

The judgment is reversed and the cause is remanded for a new trial.

All concur.