ELLA A. WHITE & another *vs.* ALEXANDER McLAREN & others.

Suffolk. March 13, 1890. — June 18, 1890.

Present: FIELD, DEVENS, W. ALLEN, HOLMES, & KNOWLTON, JJ.

*Building Contract — Specifications — Express Warranty — Damages.*

A writing, signed by a firm of builders and a landowner's agent, contained only a promise by them " to furnish all stock and materials of every name and nature mentioned in the specifications, or necessary for the proper performance of the work so shown or described, and under the superintendence of G. R. C., architect, and identified by the signatures hereto." Reference was also had to " the apartment building to be erected " on the land, to the beginning and pushing of the " work " to completion, and to payments estimated upon " the value of work and material" to be made by the agent to the builders, upon the architect's certificate that " the terms of this contract are complied with." The specifications, which were not signed, but were otherwise identified, contained, after a general description of the building, the words, " The work to be left clean and whole, and warranted tight, including roof, for two years," and also, after a particular description of the materials and construction of the gutters, conductors, and roof, this clause : " All to be guaranteed for one year from completion of the building." *Held*, that the writing formed a building contract for a completed building ; that the contract did not import an express warranty of a tight roof, but at most a stipulation as to its soundness, and that the specifications were referred to merely to show what stock and materials were called for ; and that the owner, if the roof was unsound, might recoup from the contract price, as damages, the difference between the value of the roof as completed and as contracted for, or, if paid for before the discovery of a defect, might recover that difference, including a loss of the use of the premises if naturally involved.

CONTRACT against Alexander McLaren, John McLaren, Rufus E. Lord, and David D. Lord, upon a written agreement dated April 20, 1885, signed by the McLarens, who were carpenters and builders doing business under the name of A. and J. Mc-Laren, and by the Lords, who were masons doing business under the name of Lord Brothers, and by Samuel D. Sargent, as agent for the plaintiffs, which agreement contained the following provisions :

" First.   The said Lords and McLarens agree, for the consideration hereinafter mentioned, to furnish all stock and materials of every name and nature mentioned in the specifications, or necessary for the proper performance of the work so shown or described, and under the superintendence of George R. Clark, architect, and identified by the signatures hereto; the apartment building to be erected in Somerville, Mass., on land situated near the city of Boston line, and on what will be facing a street, the continuation of Mount Pleasant Street, Somerville, beyond and across Perkins Street.

" Second.   In consideration of the foregoing, the said Sargent, agent for the owners, agrees to pay the said Lord Brothers and the McLarens, upon certificate of said architect that the terms of this contract are complied with, and upon sufficient evidence that all claims upon the building for work or materials up to the time of payment are discharged, the sum of nineteen thousand dollars, in manner following, viz. : During the progress of the work, sums not exceeding eighty per cent of work and materials furnished up to time of payment.   Work to be commenced at once, and pushed forward without delay to completion.   The premises finished and ready for occupancy on or before October 1, 1885.   The sum of five thousand dollars to be reserved until an acceptance of the building as completed is given from contractors to architect, and architect to agent, at which time three thousand dollars will be paid to contractors, and the balance in thirty-three days."

The paper referred to in the contract as the " specifications," which was headed, " General conditions referred to in contracts for architectural work, from the designs and under the direction of Samuel R. Clarke, architect," was not signed.   Besides certain preliminary matter, this paper contained, after the sub-

heading "Description of Building," the following provisions: " The work to be left clean and whole, and warranted tight, including roof, for two years. . . . The gutters and conductors to be of galvanized iron, heavy weight, with all proper clamps to fasten it to building, and with proper three-inch conductors, to convey water from roofs to drains properly connected with goosenecks and irons, conductors corrugated; roofing to be of tar and gravel, to be best four-ply work; all flashings of zinc; tar very hot, and gravel heated before being applied, — all to be guaranteed for one year from completion of the building."

At the trial in the Superior Court, without a jury, before *Thompson*, J., it appeared in evidence that an apartment house was erected by the defendants for the plaintiffs under the above contract and the specifications referred to, which were used as and for the specifications called for in the contract; that the building was not completed until December, 1885; that the roof was then found to leak, and the plaintiffs presented claims for damages therefor; that on December 23, 1885, a receipt was given by the defendants for the balance due on the contract, stated to be " in full for all claims of every name and value against the estate to date "; that the account upon which this settlement was made included an item of four hundred dollars allowed by agreement to the plaintiffs as a fair compensation for the damages claimed by them for such leakage up to December 12, 1885; and that the roof afterwards leaked, and the plaintiffs, after notifying the defendants by letter of the fact and receiving no reply, repaired it in May, 1886. After showing the condition of the roof and the necessary expense of repairing the same, the plaintiffs were permitted to introduce evidence tending to show damage resulting from the leakage to the paper, paint, woodwork, etc. inside the house, and a loss of rent accruing between December, 1885, and May, 1886.

The judge refused, among other things, to rule, as requested by the defendants, that under the contract there was no express warranty to make a tight roof; but ruled in effect, that, besides the stipulation as to the nature and quality of the roof, there was an express warranty that it should continue in good condition for at least one year, and found for the plaintiffs, and assessed as damages accruing after December 12, 1885, a sum

which included compensation for the defect in the roof, damage to the interior of the building, and loss of rents; and the defendants alleged exceptions.

*W. H. Powers*, for the defendants.

*H. Wheeler*, for the plaintiffs.

KNOWLTON, J. The contract signed by the parties is peculiar. The only promise of the defendants contained in it is to furnish certain stock and materials. The paper containing the specifications is referred to for the single purpose of showing what the stock and materials are. It was not identified by the signatures of the parties, as the contract says it was; but it was otherwise sufficiently identified, and the fact that it was not signed is immaterial. The stock and materials were to be those mentioned in the specifications, and the contract is the same as if they had been described in the formal writing which was signed. No part of the specifications except the statement of the stock and materials is incorporated into the contract.

While the promise of the defendants is meagre in its language, enough appears in the contract to show that they were to erect a building. The provisions as to the time when the work was to be commenced, as to the payments to be estimated upon the value of the work and materials, and as to the discharge by the defendants of claims on the building for work as well as for materials, imply that the term "stock and materials" was intended to include work necessary to incorporate the stock and materials into the structure of the completed building. The language "all stock and materials of every name and nature mentioned in the specifications, or necessary for the proper performance of the work so shown or described, and under the superintendence of George R. Clark, architect," taken in connection with the specifications and the other parts of the contract, must be construed to mean stock and materials when wrought and made a part of the building, and to include not only the crude materials, but the labor involved in finishing them and putting them in position so as to make such a house as the specifications contemplated.

After the general description of the building, the specifications contain this clause: "The work to be left clean and whole, and warranted tight, including roof, for two years." In another

part, after a particular description of the materials and mode of construction of the gutters and conductors, and also of the roof, are found these words: " All to be guaranteed for one year from completion of the building."

Either of these expressions, if contained in the contract, might be held to be, not merely a stipulation as to what the quality and characteristics of the roof should be, but a collateral express warranty, which would continue in effect, one for one year and the other for two years after the completion of the building. In some circumstances, the rights of the plaintiffs and the measure of damages under such a contract might not be the same as under a contract relating merely to the nature and condition of the roof at the completion of the work. The trial proceeded on the theory that, collateral to the stipulation as to the nature and quality of the roof, there was an express warranty that it should continue in good condition for at least one year. In this we think there was error. Using the specifications merely to show what kind of work and materials were called for, their effect in this part is to bind the defendants to construct a roof of such a sort as would remain tight for two years. When the building was completed and the plaintiffs took possession of it, the defendants did not remain under a contract of continuing warranty that gave them any rights or created against them any liabilities as to the care or condition of the roof during that period; but if the roof was not such as was called for in respect to materials and workmanship which could be relied on to prevent leaks for two years, the plaintiffs might recoup from the contract price, as damages, the difference between the value of the building as constructed and what it would have been if the house had been built according to the contract; or, if the building had been paid for before the defect was discovered, they might bring an action to recover back that difference.

In determining such damages different elements are proper for consideration in different cases, according to the nature of the defect. Sometimes the measure of damages is the necessary cost of making the work according to the specifications. If a loss of the use of the premises for a time would naturally be involved, that should be taken into the account. We can imagine a defect of such a kind that the probability of the owners

using the house without discovering it, and suffering damage to the building in such use of it, might be considered in fixing its value as constructed. The defect might be of such a character as to diminish the value of the house but little, while to make the work conform literally to the contract would involve reconstruction at unreasonable and disproportionate expense. The question ordinarily is, How much less is the building fairly worth than it would have been if the contract had been performed? *Hayward* v. *Leonard*, 7 Pick. 181. *Veazie* v. *Hosmer*, 11 Gray, 396. *Powell* v. *Howard*, 109 Mass. 192.

In the present case, the specifications in one part call for a roof of such a kind as shall be tight for two years, and we think that is the controlling stipulation as to the soundness of the roof. The other clause, which described the gutters and conductors as well as the roof, includes all their qualities, and requires these parts of the building to be such as will continue in good condition for one year. The plaintiffs are entitled to damages for the defect in the roof, to be estimated upon the principles which we have stated, subject to such deduction as should be made on account of the payment of a part of the damages in the former settlement between the parties. *Exceptions sustained.*