WILLIAM J. MARSHALL AND ANOTHER v.
MARVIN H. ANDERSON CONSTRUCTION COMPANY.

167 N. W. (2d) 724.

May 2, 1969—No. 41432.

*Kempf & Ticen* and *James D. Kempf,* for appellant.
*Shanedling, Phillips, Gross & Aaron* and *Felix M. Phillips,* for respondents.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Frank T. Gallagher, JJ.

NELSON, JUSTICE.

Appeal from an order of the District Court of Hennepin County denying defendant's motion for judgment notwithstanding the verdict or for a new trial.

This case consists of a claim of either breach of warranty or negligence in the construction of a new home. The facts appear to be that on May 30, 1961, plaintiffs William and Patricia Marshall contracted to purchase a home from defendant, Marvin H. Anderson Construction Company, for $15,400, the house to be completed during the last week of August 1961. The purchase price was paid. In addition to giving plaintiffs a written warranty as to workmanship and material, defendant explicitly orally warranted the home's workmanship and materials to be "of the highest" order. However, from the time plaintiffs moved into the new home down

to the time of trial, their basement was continually wet or flooded during and for weeks after steady or prolonged rains and during and after the spring thaw.

When plaintiffs complained, defendant first assured them that the situation was temporary and would correct itself. Afterwards defendant took certain half-measures, such as applying putty to the walls, and, finally, 4 years later and against plaintiffs' wishes, put in an inadequate drain field and sump-pump device which even defendant admitted did not work or solve the problem. It appears that numerous persons saw the flooded condition of the basement many times over the years and there was testimony that even during dry periods the basement was never free from mildew or mold.

Plaintiffs claim that they have been deprived of the use of their basement for 7 years; that they have been deprived for a good part of each year of storage, living, entertaining, and playing space, as well as surroundings properly fitting into the performance of their household tasks; and that for all practical purposes they bought a house without a basement. They allege that they lost personal property, such as furniture, luggage, clothing, and appliances, of the value of $450 to $500 due to repeated floodings and the mustiness and mildew which followed in their wake. Witnesses verified these losses and also the claim that the room used by plaintiffs' little girl was never heated properly by defendant's heating installation.

Plaintiffs also claim the ventilation of the roof was faulty, causing moisture and condensation inside the house which stained the walls and peeled the paper on the entire north wall each year during their occupancy.

Rudy Ocel, a highly qualified, experienced contractor and former building inspector, who was unacquainted with the parties, made a careful inspection of the home and found it, with respect to the foregoing problems (except the heating problem which he did not inspect), to have been built negligently, improperly, and below the standard of workmanship in the community. He set out in detail the many respects in which the drain field was inadequate in its function and the ventilation in the home was insufficient. Mr. Ocel testified as to what would be needed at a minimum to correct the problems, apart from the heating, and said the cost of such corrections would be at least $3,000.

In addition to providing evidence as to personal property loss, Mrs. Marshall testified that the house was worth $5,400 less than the price they had paid. Mr. Marshall concurred in this estimate. Their estimates did not include any valuation of the loss of use of portions of the home.

Defendant's expert, B. A. Madson, a former real estate broker who is now an appraiser employed by defendant, but who is not in the building trades and has built only two houses during his total construction experience, failed to observe even the grading defects of the yard which defendant's engineer, Calvin H. Hedlund, had observed and described. Mr. Madson admitted that he was unqualified to testify on other facets of the case.

Mr. Hedlund, an employee of defendant, had directed some of the unsuccessful measures taken during the years to remedy the defects. He testified that he had prescribed and ordered the drain field and sump pump inside the house, which plaintiffs had not wanted and which did not work. Plaintiffs contend that this method was cheaper than the one which they had requested and defendant had refused to install despite the fact it had done so to solve a similar problem in a house across the street from plaintiffs' home.

At the time of trial it appears that Hedlund knew of the stains on the north wall of the house about which plaintiffs, through letters directed to defendant from time to time since 1963, had complained but which defendant had not made any attempt to correct. Hedlund also was aware that the lot was not properly graded and of the condition in the basement. He disagreed with Madson, defendant's appraiser expert, about how to remedy that condition. Hedlund also stated that he had never given any thought to the heating problem before testifying but thought that the installation of a vent might have solved the problem.

The record indicates that plaintiffs phoned and wrote letters from time to time, protesting personally to Marvin H. Anderson, defendant's president, about their numerous problems during the period they had lived in the home. Anderson promised to take care of the matters but failed to do so. It appears that defendant only urged plaintiffs to be patient, saying that problems were to be expected and would in time subside.

Defendant suggests that the case presents the following legal issues: (1) Even though the defects are as plaintiffs claimed, is the evidence sufficient

to support recovery on the basis of either breach of warranty or negligence? (2) Where defects in construction of a home and resultant damages were alleged, did the trial court err in refusing to permit the jury to view the premises? (3) Where damages are claimed for breach of warranty or negligence in construction of the home and the jury is permitted to award damages for the difference in the value of the product contracted for and the value of the product as delivered, may the jury, in addition, be permitted to award consequential damages for (a) damage to property and (b) partial loss of use of the property, and, if so, for what period of time? (4) Did plaintiffs make any attempt to mitigate damages, and did the jury consider mitigation? (5) Were the damages awarded by the jury in the instant case excessive?

■ It is clear that plaintiffs' action and their right to recover are based on two nonexclusive theories, namely, negligence or breach of warranty.

Defendant contends that under the evidence submitted there is no showing that it performed in other than a reasonably prudent manner, and that, therefore, negligence should not be imputed to it merely because the house failed to adequately function in some respects.

Defendant further contends that, since plaintiffs cannot maintain their action on the basis of defendant's negligence upon the record herein, recovery, if any, must be predicated on breach of warranty. Defendant then argues that breach of warranty may only be found if the evidence would support a finding of failure to build in a proper and workmanlike manner and concludes that evidence of such failure does not exist.

Defendant cites only one case which it claims to be controlling—H. P. Droher & Sons v. Toushin, 250 Minn. 490, 85 N. W. (2d) 273. Upon reviewing this case, we fail to see why defendant is justified in placing any reliance thereon in support of its contentions. A recent case militating against them is Brasch v. Wesolowsky, 272 Minn. 112, 116, 138 N. W. (2d) 619, 623, in which this court said in commenting upon the record in that case:

"* * * Defendant does not seriously dispute the fact that there were some defects in the construction, but he contends that there is no evidence of his personal negligence. * * * [Defendant claims his subcontractors were responsible.]

"* * * [A] contractor owes his contractee a duty to use due care in the performance of his undertaking * * *. Thus, defendant's admitted agreement bound him to respond in damages to plaintiff for unworkmanlike performance within the scope of his undertaking * * *."

Here, too, defendant's agreement bound it to respond in damages for unworkmanlike performance within the scope of its undertaking.

Other cases and authorities bearing upon the issues here involved are Kopischke v. Chicago, St. P. M. & O. Ry. Co. 230 Minn. 23, 40 N. W. (2d) 834; McCormick, Damages, § 170; Sedgwick, Damages (9 ed.) § 644; 13 Am. Jur. (2d) Building and Construction Contracts, § 76, note 6; Hartman v. Pittsburgh Incline Plane Co. 159 Pa. 442, 28 A. 145. See, also, Schmeet v. Schumacher (N. D.) 137 N. W. (2d) 789.

■ A view of premises in a case such as the instant one is generally conceded to be discretionary with the trial court. Upon the state of the record herein, it must be held that there was no abuse of that discretion in the trial court's refusal to order a view. See, State v. Gardin, 251 Minn. 157, 86 N. W. (2d) 711.

■ In the Droher case this court reviewed at length the rule of damages applicable to facts somewhat similar to those in the instant case, stating (250 Minn. 499, 85 N. W. [2d] 280):

"* * * [W]here there is a substantial good-faith effort to perform the contract but there are defects of such a nature that the contract has not been performed according to its terms, which defects can be remedied without the destruction of a substantial part of the building, the owner is entitled to recover the cost of making the work conform to the contract but, where it appears that the cost of remedying the defects is grossly disproportionate to the benefits to be derived therefrom, the owner is entitled to recover the difference between the value of the property as it would have been if the contract had been performed according to its terms and the value in its condition as constructed."

We think, in view of the extensive damage and the costs to which plaintiffs would have been exposed as a result of any effort to properly correct the defects in this house, it was proper for the trial court to supply the difference-in-value theory in assessing damages.

This court in the Droher case also said (250 Minn. 498, 85 N. W. [2d] 279):

"The applicable rule is to be found in Restatement, Contracts, § 346, as follows:

" '(1) For a breach by one who has contracted to construct a specified product, the other party can get judgment for compensatory damages for all unavoidable harm that the builder had reason to foresee when the contract was made, less such part of the contract price as has not been paid and is not still payable, determined as follows:

" '(a) For defective or unfinished construction he can get judgment for either

" '(i) the reasonable cost of construction and completion in accordance with the contract, if this is possible and does not involve unreasonable economic waste; or

" '(ii) the difference between the value that the product contracted for would have had and the value of the performance that has been received by the plaintiff, if construction and completion in accordance with the contract would involve unreasonable economic waste.' "

Defendant argues that the court erred in permitting the jury to consider plaintiffs' personal property loss due to defendant's faulty construction. We think the record clearly established this damage and that the loss in the value of the property was from $450 to $500. It is clear from the holding in the Droher case that in any such case the full proper measure of damages includes the actual cost of labor and materials, increased overhead, damage caused by the delay, and any other matters found from the preponderance of the evidence to have naturally flowed from the breach of contract. See, 5B Dunnell, Dig. (3 ed.) § 2565, and cases cited thereunder.

In Hartman v. Pittsburgh Incline Plane Co. *supra,* wherein the injuries alleged were somewhat similar to those in the case at bar, the Pennsylvania court said (159 Pa. 445, 28 A. 146):

"* * * That part of said abutment adjoining plaintiffs' dwelling was so constructed that water, conducted there by the iron beams and otherwise, was discharged against the brick wall of the house and so saturated the

same that the plaster and paper on the inside thereof was injured and partially destroyed, and the rooms became mouldy and untenantable. While the witnesses did not state, in dollars and cents, any amount of damages resulting to plantiffs therefrom, they so described the nature, character and extent of the injury to the plastering, etc., that the jury could have ascertained with reasonable accuracy the amount thereof. As described by witnesses, the actual damages were by no means inconsiderable. In Allison v. Chandler, 11 Mich. 542, it was said: 'Juries are allowed to act upon probable and inferential, as well as direct and positive proof. And when, from the nature of the case, the amount of damages cannot be ascertained with certainty, we can see no objection to placing before the jury all the facts and circumstances of the case having a tendency to show damages and their probable amount, so as to enable them to make the most intelligible and probable estimate that the nature of the case will permit.' The ordinary intelligence and experience of jurors is sufficient to enable them to say with reasonable accuracy how much it would cost to repair damages such as were described by the witnesses in this case."

This court in the Droher case did not consider loss of use. However, Restatement, Contracts, § 346(1) (b), specifically provides:

"For any delay in completion fairly chargeable to the builder, the plaintiff can get judgment for the value of the use of the product, if it was being constructed for use * * *."

Plaintiffs have cited White v. McLaren, 151 Mass. 553, 24 N. E. 911, which appears to be squarely in point. There the plaintiffs' claim of a breach of warranty in the construction of their house was that the roof was not properly built and a water problem resulted. The court said (151 Mass. 557, 24 N. E. 912):

"In determining such damages different elements are proper for consideration in different cases, according to the nature of the defect. Sometimes the measure of damages is the necessary cost of making the work according to the specifications. If a loss of the use of the premises for a time would naturally be involved, that should be taken into the account. We can imagine a defect of such a kind that the probability of the owners using

the house without discovering it, and suffering damage to the building in such use of it, might be considered in fixing its value as constructed."

The Massachusetts court in the White case also said that the measure of damages for breach of contract to make a roof of such quality as would remain tight for 2 years is the difference between the value as constructed and as contracted for, together with loss of use of the premises if naturally involved.

Incidentally, the jury might or might not have included in the instant case the element of loss of use in arriving at its verdict of $4,900. It undoubtedly allowed plaintiffs $500 for loss of personal property. The remaining $4,400 of the verdict was less than the $5,400 general damages for defects in the construction testified to by plaintiffs.

■ We think the trial court properly charged the jury on damages as follows:

"* * * In a case of this nature, the correct measure of damages is the difference between the value of the building as it is and what it would have been worth if it had been built in conformance with the contract. Now, whether there is a difference there is your business.

"The other two items that you may consider, if you are going to consider damages, is any damages that you find that they suffered for partial loss of the use of the home at certain times of the year and any loss that you feel that they suffered in the matter of personal property. In other words, you have those three areas to consider, if you are going to consider damages, and that's your business.

"Now, in considering whether or not there was a difference in value, if the building was as it is and what it would have been according to contract, you are at liberty to consider all of the evidence you heard in the lawsuit, which would include various estimates and so-called expert opinions that we heard from various people on both sides about the value of repairs and so forth and so on. All of those things must be considered in considering the correct measure of damages.

"On the subject of damages, I also want to instruct you that in a case of this nature, where a person claims to be damaged by a failure to properly perform a contract, the party who claims he is damaged, if he has it in his

power, is bound to lessen or mitigate the damages, if he can do so by reasonable exertion."

Defendant's claims that plaintiffs made no attempt to mitigate damages and that the jury did not properly consider mitigation ignores relevant facts and the court's instructions. The record shows that plaintiffs bought and used at least 3 trailer loads of black dirt and applied it to their yard themselves to try to remedy the water problems and that they had put in extra dirt on another occasion, which defendant admitted. Plaintiffs also contend that Mr. Marshall regraded the house and banked it as well as he was able and actually put in 1,300 rolls of sod by himself. The Marshalls also did some landscaping and planting around the house, repainted the interior north wall of the house each year for 7 years to try to cope with the stains and moisture marks caused by the inadequately ventilated and constructed roof, and called in plumbers at their expense to remedy other building defects. They also bought and used an auxiliary heating device to try to remedy the lack of heat in their daughter's bedroom. It was for the jury under the charge and the evidence submitted to consider mitigation of damages and to apply its judgment on that issue.

■ Defendant contends that the amount of the damages allowed by the jury was excessive. Upon reviewing the evidence in the light most favorable to plaintiffs' verdict, we hold the amount of the damages awarded to be within the limits permitted by the evidence. See, Sawyer v. Tildahl, 275 Minn. 457, 148 N. W. (2d) 131.

The trial court's order denying defendant's motion for judgment notwithstanding the verdict for a new trial is affirmed.

Affirmed.