Jerry RANDS, Appellant (C2–86–1180),
Respondent (C2–86–1504),

v.

FOREST LAKE LUMBER MART, INC.,
Respondent (C2–86–1180), Appellant
(C2–86–1504),

Al-San, Inc., Defendant,

Littfin Lumber Co., Respondent.

Nos. C2–86–1180, C2–86–1504.

Court of Appeals of Minnesota.

March 17, 1987.

John H. Martin, St. Paul, for Jerry Rands.

Glen E. Schumann, Holsten Law Offices, Stillwater, for Forest Lake Lumber Mart, Inc.

Victor A. Kreuziger, Cousineau, McGuire, Shaughnessy & Anderson, Minneapolis, for Littfin Lumber Co.

Heard, considered and decided by POPOVICH, C.J., and PARKER and LESLIE, JJ.

## OPINION

PARKER, Judge.

Jerry Rands sued the builder of his home and two suppliers for breaches of contract and warranty. By special verdict the jury awarded Rands $9,000, apportioning the liability among the three defendants. Rands moved for judgment notwithstanding the verdict or, alternatively, a new trial on damages only. Both suppliers moved for judgment notwithstanding the verdict on the issue of liability or, alternatively, for remittitur. (The builder was bankrupt and not represented at trial). All motions were denied and Rands appealed. One of the suppliers also appealed, and the other filed a notice of review. We affirm.

## FACTS

Appellant Jerry Rands contracted with Al-San, Inc., to build his house. Al-San contracted with Forest Lake Lumber Mart (Lumber Mart) to design the house and supply materials. Lumber Mart contracted with Littfin Lumber Company to build and deliver "cantilever" floor trusses designed to provide extra support for the first floor, which was cantilevered above an open basement.

After the house was built, Rands noticed that there was an unusual bounce to the

living room floor and the walls of the bathroom were not plumb. On inspection he discovered that the trusses were not cantilevered, sagged and appeared to be made of inferior and undersized material. After unsuccessful attempts to resolve the problem with Al-San, the Lumber Mart and Littfin, Rands sued all three for breaches of contract and warranty. Al-San was bankrupt and was not represented at trial.

On the first day of trial Rands learned that Lumber Mart planned to call real estate appraiser Robert Lafayette to testify to diminution in value. Rands objected that he was unfairly surprised, disputing Lumber Mart's claim that notice had been served upon him several weeks earlier. After ordering a continuance to allow Rands to depose Lafayette, which he declined to do, the court admitted the testimony.

Both Rands and Littfin introduced expert witnesses who testified to cost of cure. Rands' expert quoted $56,350; Littfin's expert quoted $800.

Lumber Mart's expert testified to diminution of value, basing his figures on the cost-of-cure testimony. Assuming the house to be structurally sound, he testified that its fair market value was $93,000. Assuming defects which could be repaired at a cost of $800, he testified that the diminution in value would be $800. Assuming that the cost of repair was $55,350, he testified that the house would have reached incurable functional obsolescence, meaning that a prudent investor would not make the repairs, and therefore the diminution in value would be a maximum of 20 percent of market value, or $18,600. He also stated that he did not notice any structural defects when he went through Rands' house.

Rands presented no expert testimony on diminution of value. However, Rands himself testified that, based on a market value of $93,000 if structurally sound, his house was diminished in value by $83,000.

The jury also heard expert testimony on liability and viewed the premises.

The court instructed the jury on breach of warranty only, refusing Rands' request to instruct on breach of contract. After deliberation, the jury returned a special verdict apportioning liability equally among the three defendants and awarding Rands $9,000 in damages.

## ISSUES

1. Did the trial court err in denying the suppliers' motions for judgment notwithstanding the verdict on the issue of liability?

2. Did the trial court err in denying Rands' motion for a new trial on the issue of damages?

3. Did the trial court err in denying the suppliers' motions for remittitur?

## DISCUSSION

### I

Judgment notwithstanding the verdict "may be granted only when the evidence is so overwhelming on one side that reasonable minds cannot differ as to the proper outcome." * * * In applying this standard, (1) all the evidence, including that favoring the verdict, must be taken into account, (2) the evidence is to be viewed in the light most favorable to the verdict, and (3) the court may not weigh the evidence or judge the credibility of the witnesses.

*Lamb v. Jordan*, 333 N.W.2d 852, 855 (Minn.1983) (citations omitted).

While Lumber Mart and Littfin do not dispute that they supplied Rands with defective floor joists, they contend there was no evidence to establish a causal relationship between those defects and the damage to the house. We disagree. On direct examination, Rands' expert testified that most of the problems he observed in the house stemmed from the fact that the floor joists were inadequate because they were not fabricated for cantilever bearing and "did not meet the 40 pound per square foot live load requirement." He testified that the solution was to replace or add to the existing trusses.

Even Littfin's own expert felt that the trusses were not supporting properly, but were bending and needed additional support. On direct examination he called it "a dangerous condition that should be fixed." When asked for his opinion on whether the structural integrity of the trusses was compromised by the lack of cantilever design, he answered, "Yes, I believe that this is a substandard condition and should not be allowed to continue."

Applying the proper standard of review, this testimony was sufficient to deny the suppliers' motions for judgment notwithstanding the verdict on the issue of liability.

## II

A new trial may be granted to all or any of the parties and on all or part of the issues for any of the following causes:

\* \* \* \* \* \*

(5) Excessive or insufficient damages, appearing to have been given under the influence of passion or prejudice;

(6) Errors of law occurring at the trial, and objected to at the time or, if no objection need have been made under Rules 46 and 51, plainly assigned in the notice of motion \* \* \*

Minn.R.Civ.P. 59.01. Absent a clear abuse of discretion, the trial court's decision will not be reversed. *LaValle v. Aqualand Pool Co., Inc.,* 257 N.W.2d 324, 328 (Minn. 1977).

Rands argues that the trial court erred in denying his motion for a new trial on the issue of damages. He contends (1) the trial court erred in admitting expert testimony on diminution in value over his objection that he was unfairly surprised; (2) the trial court erred in failing to instruct the jury as to the law of breach of contract in addition to breach of warranty; and (3) the damages were not justified by the evidence.

■ Rands claims he was unfairly surprised by real estate appraiser Robert Lafayette's testimony. He contends he had not heard of Lafayette until the first day of trial and that he had prepared to offer expert testimony on damages based on cost of repair only, not anticipating that Lumber Mart would be "raising diminution in value on the day of trial."

In deciding to admit Lafayette's testimony, the trial court was resolving a conflict in which two reputable attorneys disagreed on whether notice had been given six weeks earlier. Rands was allowed time in which to depose Lafayette, but chose not to do so. More importantly, we cannot agree that introduction of testimony on diminution in value constitutes unfair surprise in a case involving defective construction. In arriving at the proper measure of damages in such a case, evidence as to both diminution in value and cost of cure should be expected:

[W]here there is a substantial good-faith effort to perform the contract but there are defects of such a nature that the contract has not been performed according to its terms, which defects can be remedied without the destruction of a substantial part of the building, the owner is entitled to recover the cost of making the work conform to the contract [cost of cure] but, where it appears that the cost of remedying the defects is grossly disproportionate to the benefits to be derived therefrom, the owner is entitled to recover the difference between the value of the property as it would have been if the contract had been performed according to its terms and the value in its condition as constructed [diminution in value].

*H.P. Droher and Sons v. Toushin,* 250 Minn. 490, 499, 85 N.W.2d 273, 280 (1957). This measure of damages applies to breach of warranty as well. *Marshall v. Marvin H. Anderson Construction Co.,* 283 Minn. 320, 325, 167 N.W.2d 724, 727–28 (1969).

As expressed in the current *Restatement of Contracts:*

If a breach results in defective or unfinished construction and the loss in value to the injured party is not proved with sufficient certainty, he may recover damages based on

(a) the diminution in the market price of the property caused by the breach, or

(b) the reasonable cost of completing performance or of remedying the defects *if that cost is not clearly disproportionate to the probable loss in value to him.* *Restatement (Second) of Contracts* § 348 (1981) (emphasis added).

■ Diminution in market value is a commonly recognized measure of damages. As the maximum that can be recovered, diminution in value *must* be determined when the cost of cure is as high as is urged in this case ($56,350 to cure defects in a home with a market value of $93,000 if structurally sound). As an indicator of probable loss in value to the injured party, diminution in value is useful in determining whether awarding cost of cure would be economically wasteful or, put more accurately, would constitute a windfall. *See id.,* Comment c.

■ At oral argument Rands argued that the trial court should have bifurcated the trial *sua sponte* and proceeded on the issue of liability only. However, it is incumbent upon counsel to make such a motion. Finding no error in the trial court's decision, we affirm the trial court's denial of Rands' motion for a new trial on this basis.

■ Rands also contends the trial court erred in refusing to instruct the jury on the law of breach of contract in addition to breach of warranty. Evidently, the trial court concluded that such an instruction would confuse the jury; this conclusion seems sensible and within the court's discretion. Since the measure of damages would be the same under either theory, we find no error.

Rands also complains of the submission of a special verdict form which would have allowed the jury to apportion some fault to him. However, since the jury did not do so, we conclude that the issue is academic and need not be addressed.

■ Finally, Rands objects to the jury's award of $9,000 in damages. He argues that this appears to be a quotient or compromise verdict, because $9,000 is not one of the three figures ($56,350, $18,600, and $800) presented to the jury. We disagree. In setting an award, the jury need not adopt the figures of any particular witness; it is sufficient if the result is "within the mathematical limitations established by the various witnesses and is otherwise reasonably supported by the evidence as a whole." *Carroll v. Pratt,* 247 Minn. 198, 202, 76 N.W.2d 693, 697 (1956).

■ Both Rands and Littfin introduced expert witnesses who testified to cost of cure, giving widely disparate figures of $56,350 and $800 respectively. Rands' expert introduced into evidence an itemized breakdown which included, among other things, the costs of removing and replacing 25 sagging floor trusses, the rear deck, all of the carpeting and vinyl flooring, and all of the kitchen cabinets and wainscoting. He also included the cost of painting the entire interior and exterior of the house. Littfin's expert, on the other hand, testified that the repair could be effected simply by bracing the existing trusses on each side with half-inch plywood to give them added strength.

The testimony as to diminution in value was similarly wide-ranging: Lumber Mart's expert testified that, based on the cost-of-cure testimony, it was either $800 or $18,600; Rands testified that it was $83,000.

The $9,000 figure arrived at by the jury is within the outside limits of the testimony and is reasonably supported by the evidence as a whole. Based on this evidence as illuminated by its view of the premises, the jury may well have concluded that certain of the cost-of-cure items were unnecessary and pared the list down to its essentials, or it may have concluded that opinions of the diminution in value were grossly exaggerated. Accordingly, we affirm the trial court's denial of Rands' motion for a new trial on this basis.

### III

■ Lumber Mart and Littfin contend the trial court abused its discretion in fail-

ing to grant their motions for remittitur. The decision to grant or deny remittitur lies within the trial court's discretion, however, and will not be disturbed on appeal absent a clear abuse of discretion. *Krueger v. Knutson*, 261 Minn. 144, 158, 111 N.W.2d 526, 535 (1961). Under the circumstances described above, we find no abuse of discretion.

## DECISION

Affirmed.