**RYN, INC., Appellant (Plaintiff),**

v.

**PLATTE COUNTY MEMORIAL HOSPITAL BOARD OF TRUSTEES and Gertsch/Baker & Associates, Inc., Appellees (Defendants).**

No. 91–270.

Supreme Court of Wyoming.

Dec. 10, 1992.

Don W. Riske (argued) of Riske & Arnold, Cheyenne, for appellant.

Frank J. Jones, Wheatland, for appellee Hospital Bd. of Trustees.

Patricia L. Simpson (argued), and Aron Henning Simpson, Laramie, for appellee Gertsch–Baker.

Before MACY, C.J., and THOMAS, CARDINE, URBIGKIT * and GOLDEN, JJ.

* Chief Justice at time of oral argument.

CARDINE, Justice.

In this appeal, RYN, Inc. (RYN) challenges the amount of damages the jury awarded for wrongful termination of its construction contract with appellee Platte County Memorial Hospital Board of Trustees (Board). Specifically, RYN appeals from the trial court's orders which entered judgment on the jury's verdict and which denied its motion for amendment of judgment or a new trial on the issue of damages.

We affirm.

RYN states the issues as follows:

## Issue I

Whether the trial court erred in denying Appellant's Motion for Amendment of Judgment or, in the Alternative, for a New Trial.

## Issue II

Whether the jury was free to disregard the opinion of Appellant's damage expert in making its award of $2800.00 to Appellant for wrongful termination damages.

## Issue III

Whether the Jury Verdict awarding Appellant $2800.00 in damages for the wrongful termination of the subject construction contract was contrary to the Instructions of the Court.

## Issue IV

Whether the Jury Verdict awarding Appellant $2800.00 in damages for the wrongful termination of the subject construction contract was the result of improper considerations by the jury.

Appellee Board restates the issues in more concise form:

1. Was the jury justified in awarding the amount of damages it did to Appellant?

2. Was the trial judge justified in denying Appellant's Motion for Amendment of Judgment or, in the Alternative, for a New Trial?

Appellee Gertsch–Baker & Associates, Inc. (architect) presents no additional or supplemental issues for our review.

The litigation which resulted in this appeal arose out of the construction of an addition to Platte County Memorial Hospital in Wheatland. On March 18, 1988, the Board entered into a standard form agreement with RYN by which RYN was to construct the approximately 7,200 square foot addition for payment of $336,300.00. RYN was to begin construction on April 1, 1988, and to achieve substantial completion of the addition no later than July 25, 1988. Gertsch–Baker was to serve as the architect for the project.

RYN began construction early in April 1988. Beginning in June 1988, the Board notified the architect and RYN of numerous unacceptable and nonconforming conditions on the project. After the expected completion date for the project, July 25, 1988, passed without completion, the Board's attorney gave RYN seven-day notice that the contract would be terminated on November 14, 1988. Even after this deadline passed, both the Board and the architect attempted to work with RYN. On November 16, 1988, the architect issued a Certificate of Substantial Completion, albeit with an attached long list of items to be completed or corrected. Between January 4, 1989, and January 18, 1989, the Board also published notice of final settlement of the contract.

On February 16, 1989, the architect conducted an inspection of the project and found numerous items incomplete. He estimated that $2875.00 worth of work remained. On March 14, 1989, the Board voted to terminate the contract with RYN. The Board decided, based on the architect's advice, to withhold from RYN's payment between two and three times the approximate $2,800.00 needed to complete the project. The Board voted to pay RYN $23,000.00 from the contract money which remained, but to retain the balance to hire another contractor to complete the project.

On April 4, 1989, the Board accepted a bid of $6,462.00 to finish the work on the property. That same day, the Board's at-

torney wrote State Surety Company and notified them that the contract with RYN had been terminated due to nonperformance.

RYN filed a governmental claims act claim against the Board, alleging wrongful termination from the project. After the Board denied RYN's claim against it, RYN filed a complaint against the Board and the architect in district court. The complaint sought damages against the Board for breach of contract and wrongful termination, and against the architect for negligence, breach of the covenant of good faith and fair dealing, and intentional interference with contract. The Board responded with a counterclaim against RYN for liquidated damages for delay in constructing the addition and for alleged construction defects, and a cross-claim against the architect. The architect also cross-claimed against the Board.

A jury trial was held on all claims, beginning on August 5, 1991. Extensive testimony was elicited by all sides on responsibility for the delays and for the nonconforming conditions at the project. RYN introduced the testimony of its certified public accountant, who rendered an opinion that RYN had suffered a loss of $272,095.00 for the years 1989, 1990 and 1991 from failure to obtain bonding after being fired by the Board. On August 14, 1991, the jury rendered a verdict which may be summarized as follows:

> The jury found that the Board breached the construction contract with RYN by failing to pay the remaining $10,446.00 of the total contract price. The Board was entitled, however, to withhold $5,980.66 from the total contract amount for its costs incurred in completing the work after termination of the contract.
>
> RYN did not abandon the contract before March 14, 1989. The Board wrongfully terminated the contract. RYN suffered damages from wrongful termination of $2,800.00. The architect did not intentionally interfere with the contract between RYN and the Board.
>
> RYN breached the contract by failing to perform in a timely manner. The Board sustained $2,805.00 in damages as the result of this breach. (The jury included a margin note that this figure was calculated by multiplying the liquidated damage amount contained in the contract, $55.00 per day, by 51 days.) RYN also breached the contract by failing to perform completely (however, the jury did not award any damages for this breach).

The trial court entered judgment on the jury's verdict. RYN moved for amendment of the jury's verdict of $2,800.00 for wrongful termination, or in the alternative, for a new trial on the issue of damages. RYN asserted it was entitled to wrongful termination damages in the amount testified to by its expert, $272,095.00. The trial court denied this motion. RYN thereafter took timely appeal to this court.

[redacted] The only real issue to be decided is whether the trial court abused its discretion in refusing to amend the jury's award or to order a new trial on the issue of damages. In order to decide this issue, we necessarily consider whether the jury's damage award was so inadequate that it was not within the proper exercise of the trial court's discretion to uphold it.

[redacted] We begin our analysis with W.R.C.P. 59, which provides in part:

> (a) A new trial may be granted to all or any of the parties, and on all or part of the issues. * * * Subject to the provisions of Rule 61, a new trial may be granted for any of the following causes:
>
> * * * * * *
>
> (5) Error in the assessment of the amount of recovery, whether too large or too small[.]
>
> * * * * * *
>
> (e) A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment.

A trial court has broad discretion when ruling upon a motion for new trial. We will not disturb its decision absent an abuse of that discretion. *Coulthard v. Cossairt*, 803 P.2d 86, 91 (Wyo.1990). The grant or denial of additur is also subject to an abuse

of discretion standard. *Carlson v. BMW Indus. Serv., Inc.,* 744 P.2d 1383, 1390 (Wyo.1987), *citing McPike v. Scheuerman,* 398 P.2d 71, 73 (Wyo.1965). An court abuses its discretion when it commits an error of law under the circumstances. *Coulthard,* 803 P.2d at 91.

■ The trial court has both the right and the duty to grant a new trial or modify a jury's award if it considers under the facts and circumstances disclosed at trial that the award was inadequate. *Carlson,* 744 P.2d at 1390. *See also Cates v. Eddy,* 669 P.2d 912, 922 (Wyo.1983). The proper measure of inadequacy of an award is whether that award is "so * * * inadequate as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, or other improper cause had invaded the trial." *Coulthard,* 803 P.2d at 92. Simply stated, once the trial court determines in its discretion that an award is inadequate, grant of the appropriate relief becomes mandatory.

Appellant advances several reasons why the trial court should have granted its motion for amendment of judgment or new trial. RYN claims, first, that the jury arbitrarily disregarded the uncontroverted testimony of its expert witness. Second, RYN argues that the jury arrived at a damage figure which is unsupported by the evidence. Finally, RYN contends that the jury's award was so low as to shock the conscience of the court. We consider each of these claims in turn.

Appellant argues that since the damage figure provided by its expert witness was uncontroverted, the jury could not disregard it in reaching its verdict. While we agree with the general rule that a jury is not free to arbitrarily disregard uncontroverted testimony from a disinterested witness, the expert testimony in this case was neither disinterested nor uncontroverted.

RYN's expert, a certified public accountant, was not a disinterested witness. He testified that his firm had been RYN's accountant since 1983. Nor was his testimony uncontroverted. It may be helpful to discuss the meaning of the term "uncontroverted" in this context.

"Where the testimony of a disinterested witness is not directly contradicted but there are circumstances which controvert the testimony or explain it away, or if such testimony is clouded with uncertainty or improbability, or otherwise appears to be unreliable or unworthy of belief, the trier of fact is not bound to accept it. Justice does not require a court or jury to accept as an absolute verity any statement of a witness merely because it is not directly or specifically contradicted by other testimony, and there are many things which may properly be considered in determining the weight that should be given the direct testimony of a witness even though no adverse verbal testimony is adduced. If such testimony is evasive, equivocal, confused, or otherwise uncertain, it may be disregarded. If it is improbable, physically impossible, contrary to physical facts or to the laws of nature or scientific principles, or is opposed to common knowledge, inconsistent with other circumstances established in evidence, or contradictory within itself, it is without any value and may be disregarded."

*Matter of Krause,* 803 P.2d 81, 83 (Wyo. 1990), *quoting* 30 Am.Jur.2d *Evidence* § 1083 (1967).

Thus, testimony is not "uncontroverted" merely because the opposing side fails to call its own expert witness or introduce its own exhibits to refute the challenged testimony. Internal inconsistencies in the testimony or insufficient foundation for the basis of the expert's opinion, for example, may provide sufficient contradiction to allow the jury to disregard the opinion rendered.

Thus, the jury was instructed that

You are not bound to accept an expert opinion as conclusive, but [you] should give to it the weight to which you find it to be entitled. You may disregard any such opinion if you find it to be unreasonable.

The evidence shows that the accountant's testimony was not uncontroverted. First, his opinion as to the loss suffered by RYN was premised on the fact that RYN was

*unable to be bonded* from sometime in 1989 until the date of trial. However, RYN's insurance salesman testified that even after State Surety canceled RYN's insurance sometime in 1989 or 1990, RYN was able to get bonding through Transamerica Insurance for a brief period of time. This bonding began on approximately August 31, 1989, and continued until Transamerica was (unforeseeably) sold to Continental Casualty. Continental Casualty did elect to cancel RYN's surety status because of nonperformance on the hospital project. Even after losing its insurance, however, RYN was able to obtain bonding through a substandard surety company, Transamerica Premier. This bonding status continued through the date of trial.

The insurance agent testified that having to bid through a substandard surety company did cause RYN certain types of harm. First, greater paperwork was required. Second, a substandard bond costs more. Third, less surety credit is available in the substandard market. Finally, the standard market is more lenient than the substandard market in evaluating a company's working capital. It is possible that the jury took this testimony into account when making its award.

The accountant's testimony was further limited by his failure to undertake an independent investigation of RYN's ability to bond and/or reasons for failure to bid on projects. Under cross-examination, he admitted he did not know what RYN's maximum bonding capacity was in 1988 or 1989, that he did not know why RYN did not bid under its 1989 bonding capacity with Transamerica, and that he did not know if RYN attempted to obtain any jobs between January and April of 1989. His estimated loss figure for 1990 was based on lag time necessary to "get back into the bond market," when RYN was already back in the market.

■ A finder of fact may justifiably reject an expert opinion which is based upon an incorrect assumption of material fact. *Fry's Food Stores v. Indus. Comm'n*, 161 Ariz. 119, 776 P.2d 797, 800 (1989). RYN's expert assumed that RYN had entirely lost its bidding capacity. This assumption was proved incorrect by the testimony at trial. The jury was therefore entitled to disregard the testimony of RYN's expert on lost profits.

■ RYN next argues that the jury's award must be reversed because it was unsupported by the evidence. We do not understand RYN's argument to be that the jury should have awarded it nothing. Rather, RYN contends that once the jury found that it was wrongfully terminated, it could only award damages in an amount proved at trial. RYN's figure was the only one proposed. The question is thus, if the jury disbelieved the expert's calculation of damages, as it was entitled to do, could it award some lesser sum for which neither side offered supporting testimony?

A review of cases from other jurisdictions shows that jury awards which did not equal either the amount requested by the plaintiff or proved by expert testimony have been defended against claims for a new trial. In *Kamp Dakota, Inc. v. Salem Lumber Co., Inc.*, 89 S.D. 696, 237 N.W.2d 180 (1975), the South Dakota Supreme Court upheld a jury verdict of $200.00 for defective construction of two swimming pools against a claim that uncontroverted expert testimony supported the requested amount of $6,767.48. The court, quoting its earlier case of *Rowan v. Becker*, 73 S.D. 273, 41 N.W.2d 836, 839 (1950) stated:

> "This case does not involve liquidated damages. The proof of damages rests largely upon opinion evidence. Such evidence was to some degree weakened by cross-examination. The jurors were the sole judges of the credibility of the witnesses. They were not bound to accept the testimony of appellant's witnesses as absolutely true."

*Kamp Dakota*, 237 N.W.2d at 182.

In *Rands v. Forest Lake Lumber Mart, Inc.*, 402 N.W.2d 565 (Minn.App.1987), the court affirmed a verdict of $9,000.00 for construction defects against testimony which gave the jury three possible figures ($56,350.00, $18,600.00, and $800.00) to choose from. The court noted that in setting the award,

the jury need not adopt the figures of any particular witness; it is sufficient if the result is "within the mathematical limitations established by the various witnesses and is otherwise reasonably supported by the evidence as a whole." *Rands*, 402 N.W.2d at 569 (citation omitted). *See also Davis v. Ralston Purina Co.*, 248 Ark. 1128, 455 S.W.2d 685 (1970) (affirming jury's refusal to award damages for lost profits based on speculation).

We do not know for certain how the jury arrived at the amount of its verdict. It may be that the $2,800.00 awarded RYN for wrongful termination was meant to balance the $2805.00 awarded the Board for the construction delay. It may also be that the jury was overly generous to an appellant who should have received nothing (although since that question has not been presented on cross-appeal, we do not consider it. *See Louth v. Kaser*, 405 P.2d 276, 279 (Wyo.1965)). In any case, the amount of recovery was not outside a reasonable range, given the jury's right to disregard the expert testimony presented.

Finally, appellant contends that the jury's verdict must be reversed because it is so low that it shocks the conscience of the court. Appellant argues that this case is different from, for example, an action seeking tort damages for pain and suffering, where wide latitude is given to the jury's verdict, because his damages for wrongful termination are objectively calculable.

RYN's damages are not so "objectively calculable" as it contends. The damages claimed for improper termination involve lost profits on subsequent deals. We note that at least one court has *barred* recovery for such damages under very similar circumstances, on grounds that the damages were too speculative. *See Indiana and Michigan Elec. Co. v. Terre Haute Indus., Inc.*, 507 N.E.2d 588, 604–07 (Ind.App. 1987), *transfer denied* 525 N.E.2d 1247 (Ind.1988). While we do not take the position that such damages are barred, we do think given their somewhat speculative nature and the paucity of proof presented, reasonable persons could differ on the

amount of future profit RYN lost by virtue of the Board's actions. Therefore, a broad range of permissible jury recovery was acceptable, and the jury's verdict was not so insufficient as to shock the judicial conscience.

We hold that the trial court did not abuse its discretion in denying RYN's motion for modification of judgment or new trial. The trial court's order denying that motion, and its entry of judgment, are affirmed.